Argued and submitted September 10, 1998, decision of Court of Appeals and judgment of circuit court reversed in part and affirmed in part; case remanded to circuit court for further proceedings April 8, 1999

Steven FEARING,
*Petitioner on Review,*

*v.*

Melvin BUCHER
and Archdiocese of Portland in Oregon,
*Respondents on Review,*

*and*

PROVINCE OF ST. BARBARA,
Order of Friars Minor,
a California corporation,
and Franciscan Friars of California,
*Defendants.*

(CC9412-08665; CA A89144; SC S44382)

977 P2d 1163

Kelly Clark, Lake Oswego, argued the cause and filed the briefs for petitioner on review.

Arden E. Shenker, Portland, argued the cause for respondent on review Melvin Bucher.

Karen O'Kasey, Portland, argued the cause and filed the brief for respondent on review Archdiocese of Portland in Oregon.

David Slader, Portland, argued the cause for *amici curiae* Oregon Trial Lawyers Association, Oregon Coalition Against Domestic and Sexual Violence, National Alliance of Sexual Assault Coalitions, and National Association of Counsel for Children. With him on the brief was Michael S. Morey.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.**

GILLETTE, J.

---

** Leeson and Riggs, JJ., did not participate in the consideration or decision of this case.

## GILLETTE, J.

This case arises out of allegations by plaintiff that, as a minor, he was sexually abused by his priest in the early 1970s. The case presents two issues. The first concerns whether the doctrine of *respondeat superior*, pursuant to which an employer can be held vicariously liable for the acts of its employee, can be applied to a case involving an employee's sexual abuse of a child. The second concerns the applicability of an extended statute of limitations for actions "based on conduct that constitutes child abuse" to an employer, where liability is based on *respondeat superior*.

Defendant Archdiocese of Portland in Oregon (the Archdiocese) was the supervising archdiocese of the priest, Bucher, during the period in which the child abuse allegedly occurred. Plaintiff's amended complaint asserts liability in the Archdiocese on theories of vicarious liability through application of the doctrine of *respondeat superior* and of negligent retention, supervision, and training of Bucher.[1] The case comes before us for review of the trial court's grant of motions by the Archdiocese under ORCP 21 to dismiss both claims for relief as time-barred and for failure to state ultimate facts sufficient to constitute a claim.[2] The Court of Appeals affirmed the dismissal for failure to state a claim, based on that court's conclusions that: (1) the complaint did not allege facts from which it reasonably could be concluded that Bucher's sexual assaults on plaintiff were within the scope of Bucher's employment; and (2) the complaint failed adequately to allege that the Archdiocese "knowingly allow[ed], permit[ted] or encourag[ed] child abuse" as required by ORS 12.117, the extended statute of limitations for child abuse actions, thus rendering that statute inapplicable to plaintiff's negligent retention claim.[3] *Fearing v.*

---

[1] Plaintiff's complaint also named as defendants the Franciscan Friars of California, Inc., and the priest, Bucher. Plaintiff settled all claims with those defendants. The issues before this court are concerned solely with the Archdiocese's liability for the acts of the priest.

[2] The trial court apparently granted the Archdiocese's motions in their entirety. Accordingly, in his appeal to the Court of Appeals, plaintiff assigned error to the trial court's order granting each motion.

[3] In rendering its decision, the Court of Appeals relied on its reasoning and decision in a companion case, *Lourim v. Swensen*, 147 Or App 425, 936 P2d 1011

*Bucher*, 147 Or App 446, 936 P2d 1023 (1997). In light of those holdings, the court did not reach the issue whether the claim of vicarious liability based on application of the doctrine of *respondeat superior* is barred by the applicable statute of limitations. *Id.*

Plaintiff seeks review of the Court of Appeals' decision only insofar as it affirmed the trial court's order with respect to the dismissal for failure to state a claim for vicarious liability based on application of the doctrine of *respondeat superior*. We limit our review accordingly. In reviewing the Court of Appeals' decision in that regard, our task is not to decide whether the sexual abuse occurred or, if so, whether the Archdiocese ultimately is liable for it. Rather, our only task is to determine whether, in light of the allegations of the complaint, the trial court could decide as a matter law that the Archdiocese could not be held vicariously liable for Bucher's actions. We conclude that the allegations of the amended complaint are sufficient to state a claim of vicarious liability against the Archdiocese based on application of the doctrine of *respondeat superior*. Therefore, we reverse in part the decision of the Court of Appeals. We also hold that that claim is not, on the record before us, time-barred as a matter of law.

■    ORCP 18 A requires a complaint to contain "[a] plain and concise statement of the ultimate facts constituting a claim for relief without unnecessary repetition." In determining the sufficiency of plaintiff's complaint, we accept all well-pleaded allegations of the complaint as true and give plaintiff the benefit of all favorable inferences that may be drawn from the facts alleged. *Boise Cascade Corp. v. Board of Forestry*, 325 Or 185, 196-97, 935 P2d 411 (1997). Conclusions of law alone, however, are insufficient. *See Zehr v. Haugen*, 318 Or 647, 655-56, 871 P2d 1006 (1994) (allegations in complaint do not state ultimate facts sufficient to state a claim for breach of warranty despite inclusion of such conclusory terms as "warranty agreement").

The following facts are alleged in the complaint. From 1970 through 1972, Bucher, a priest operating out of a

(1997), decided the same day. We allowed review in *Lourim* and announce our decision in that case today. *See Lourim v. Swensen*, 328 Or 380, 977 P2d 1157 (1999).

local parish, and an employee of the Franciscan Friars of California, Inc., and the Archdiocese, acted as youth pastor, friend, confessor, and priest to plaintiff and his family. Plaintiff and his family became close to Bucher, and Bucher was a frequent guest in their home. Bucher gained the trust and confidence of plaintiff's family as a spiritual guide and priest and as a youth pastor and mentor to plaintiff, then an adolescent. By virtue of that relationship, Bucher gained the support, acquiescence, and permission of plaintiff's family to spend substantial periods of time alone with plaintiff.

Bucher also won the friendship and admiration of plaintiff himself. He was his spiritual advisor, mentor, and confessor. Bucher began to socialize with plaintiff and to spend time alone with him. He used his position of trust to touch plaintiff physically. Eventually, Bucher committed a series of sexual assaults on plaintiff. At the time of those assaults, plaintiff was a minor.

Plaintiff further alleges in the complaint that, at all times relevant to the complaint, Bucher was an employee of the Archdiocese and the abuse was committed in connection with Bucher's employment as youth pastor and priest. The complaint describes Bucher's performance of his priestly and pastoral duties in developing a trust relationship with plaintiff and his family, together with the eventual sexual assaults, as "[m]anipulations." Plaintiff then alleges:

> "The [m]anipulations * * * were committed within the time and space limits of [Bucher's] employment as youth pastor and priest, were committed out of a desire, at least initially and partially, to fulfill his employment duties as youth pastor and priest, and the [m]anipulations were generally actions of a kind and nature which Bucher was required to perform as youth pastor and priest."

■ ■ Under the doctrine of *respondeat superior*, an employer is liable for an employee's torts, including intentional torts, if the employee was acting within the scope of employment. *See, e.g., Stroud v. Denny's Restaurant*, 271 Or 430, 532 P2d 790 (1975) (employer liable for employee's malicious prosecution of customer because employee's action was

within the scope of employment); *cf. G.L. v. Kaiser Foundation Hospitals, Inc.,* 306 Or 54, 757 P2d 1347 (1988) (dismissal of action for vicarious liability based on application of doctrine of *respondeat superior* proper because plaintiff failed to allege that employee's conduct was within the scope of employment). Thus, a complaint generally is sufficient to state a claim for vicarious liability based on application of the doctrine of *respondeat superior* if it states ultimate facts that, if true, would establish that an employee was acting within the scope of employment when the employee allegedly committed the acts that led to plaintiff's injury.

In *Chesterman v. Barmon,* 305 Or 439, 442, 753 P2d 404 (1988), this court outlined three requirements that must be met to establish that the employee's conduct was within the scope of employment: (1) the conduct must have occurred substantially within the time and space limits authorized by the employment; (2) the employee must have been motivated, at least partially, by a purpose to serve the employer; and (3) the act must have been of a kind that the employee was hired to perform. The decision then explored the proper applicability of those requirements in the context of vicarious liability premised on an employee's intentional tort.

In *Chesterman,* the trial court had granted summary judgment in favor of a defendant corporation whose employee allegedly ingested a hallucinatory drug to enable him better to focus his attention on work. While under the influence of that drug, the employee broke into the plaintiff's house and sexually assaulted her. On review, this court held that the intentional tort itself, the sexual assault, unquestionably was outside the scope of employment, but that did not conclude the inquiry. *Id.* at 443. The court stated that, in cases where there is a "time-lag" between the act allegedly producing the harm and the resulting harm, it is inappropriate to determine whether *respondeat superior* applied as of the time when the injury occurred. *Id.* at 444. Rather, "[t]he focus should be on the *act* on which vicarious liability is based and not on when the act results in *injury*."[4] *Id.* (emphasis in original).

---

[4] Put another way, an employee's intentional tort rarely, if ever, will have been authorized expressly by the employer. In that context, then, it virtually always will

■     As in *Chesterman*, Bucher's alleged sexual assaults on plaintiff clearly were outside the scope of his employment, but our inquiry does not end there. The Archdiocese still could be found vicariously liable, if acts that were within Bucher's scope of employment "resulted in the acts which led to injury to plaintiff." *Id.* at 443.

■     Whether an employee has acted within the scope of employment at any given time generally is a question for the trier of fact, except in cases where only one reasonable conclusion may be drawn from the facts pled. *Stanfield v. Laccoarce*, 284 Or 651, 655, 588 P2d 1271 (1978). In the context of the present case, where, like *Chesterman*, the employer's vicarious liability arises out of the employee's commission of an intentional tort, we must consider whether the allegations contained in the amended complaint state ultimate facts sufficient to establish that acts that were within Bucher's scope of employment resulted in the acts that caused injury to plaintiff.

The complaint alleges that Bucher used his position as youth pastor, spiritual guide, confessor, and priest to plaintiff and his family to gain their trust and confidence, and thereby to gain the permission of plaintiff's family to spend large periods of time alone with plaintiff. By virtue of that relationship, Bucher gained the opportunity to be alone with plaintiff, to touch him physically, and then to assault him sexually. The complaint further alleges that those activities were committed in connection with Bucher's employment as youth pastor and priest, that they were committed within the time and space limitations of Bucher's employment, that they were committed out of a desire, at least partially and initially, to fulfill Bucher's employment duties as youth pastor and priest, and that they generally were of a kind and nature that was required to perform as youth pastor and priest.

■     More than one plausible inference may be drawn from the foregoing allegations: The jury could infer that Bucher took the job solely to gratify his own deviant desires and that all the activities preceding the sexual abuse were

be necessary to look to the acts that led to the injury to determine if *those* acts were within the scope of employment.

motivated solely to further his own interests, not those of the Archdiocese. Or, as plaintiff contends, a jury could infer that the sexual assaults were the culmination of a progressive series of actions that began with and continued to involve Bucher's performance of the ordinary and authorized duties of a priest. Viewing the complaint in that light, the jury also could infer that, in cultivating a relationship with plaintiff and his family, Bucher, at least initially, was motivated by a desire to fulfill his priestly duties and that, over time, his motives became mixed. We conclude that the amended complaint contains allegations sufficient to satisfy all three *Chesterman* requirements for establishing that employee conduct was within the scope of employment.[5]

■ The Archdiocese argues that the complaint "fails to identify 'any interest of the employer' that could possibly be served by the acts of abuse plaintiff alleges were committed by Bucher," or "any acts which Bucher was hired to perform that are of the same kind as the acts of abuse alleged to have been perpetrated by him." The Court of Appeals was of the same view, holding in a companion case, *Lourim v. Swensen,* 147 Or App 425, 936 P2d 1011 (1997), which involved a complaint containing virtually identical allegations of "[m]anipulations," including the eventual sexual abuse of a child, that "there are no facts from which it reasonably could be concluded that [the employee's] sexual assaults were acts" of a kind he was hired to perform. *Id.* at 438.

The Archdiocese's position and the reasoning of the Court of Appeals in this regard suffer from the same defect. They both neglect to consider that, in the intentional tort context, it usually is inappropriate for the court to base its decision regarding the adequacy of the complaint on whether the

---

[5] The Court of Appeals held that the allegation in the complaint that "the [m]anipulations were * * * generally actions of a kind and nature which Bucher was required to perform as youth pastor and priest," simply set out one of the three *Chesterman* factors and was nothing more than a conclusion of law. *Fearing,* 147 Or App at 453. We disagree. An ultimate fact is a fact from which legal conclusions are drawn. A conclusion of law, by contrast, is merely a judgment about a particular set of circumstances and assumes facts that may or may not have been pleaded. *Moore v. Willis,* 307 Or 254, 259, 767 P2d 62 (1988). Allegations of when particular conduct occurred, of the motivation behind that conduct, and of the employment-related nature of that conduct all are assertions of fact, which can be proved or disproved.

complaint contains allegations that the intentional tort *itself* was committed in furtherance of any interest of the employer or was of the same kind of activities that the employee was hired to perform. Such circumstances rarely will occur and are not, in any event, necessary to vicarious liability. Rather, the focus properly is directed at whether the complaint contains sufficient allegations of Bucher's conduct that was within the scope of his employment that arguably resulted in the acts that caused plaintiff's injury. *Chesterman*, 305 Or at 443. In light of the allegations that we already have described, the trial court erred in dismissing the complaint.

Finally, the Archdiocese argues that the instant case differs from *Chesterman* in a material respect. According to the Archdiocese, *Chesterman* requires that the pleading contain allegations of a causal connection between the acts that are alleged to be within the scope of employment and the harm to plaintiff. The Archdiocese asserts that plaintiff's amended complaint contains no such allegation. The Archdiocese correctly notes that plaintiff does not directly allege that Bucher's activities in developing a trust relationship with plaintiff and his family caused plaintiff's injuries but, instead, merely alleges that Bucher "gained the opportunity to commit the assaults" by abusing his position.

The Archdiocese argues that, if we hold that an employer can be liable for its employee's alleged sexual assault on plaintiff simply because it provided the employee with an "opportunity" to commit the assaults—which, in the Archdiocese's view, is all that plaintiff has alleged here—then all manner of employers that provide their employees with an opportunity to be alone with third parties can be held liable for the intentional torts of those employees. The Archdiocese likens the facts of the instant case to those of *G.L. v. Kaiser Foundation Hospitals*, 306 Or at 61, in which this court upheld the dismissal of a claim for vicarious liability against a hospital for the sexual assault of an unconscious patient by a respiratory therapist, based on the court's conclusion that there was no allegation that the employee was acting to further an interest of the employer.

We disagree with the Archdiocese's contention that plaintiff has failed adequately to plead that necessary connection here. This is not a case like *G.L.* in which the *only*

nexus alleged between the employment and the assault was that the employment brought the tortfeasor and the victim together in time and place and, therefore, gave the tortfeasor the "opportunity" to commit the assaults. Here, plaintiff alleges that Bucher "us[ed] and manipulat[ed] his fiduciary position, respect and authority as youth pastor and priest" to befriend plaintiff and his family, gain their trust, spend large periods of time alone with plaintiff, physically touch plaintiff and, ultimately, to gain the opportunity to commit the sexual assaults upon him. A jury reasonably could infer that Bucher's performance of his pastoral duties with respect to plaintiff and his family were a necessary precursor to the sexual abuse and that the assaults thus were a direct outgrowth of and were engendered by conduct that was within the scope of Bucher's employment. *See Chesterman*, 305 Or at 443-44 (identifying and applying that standard).

The fact that a jury in the present case also could conclude that Bucher's efforts to cultivate a trust relationship with plaintiff did not "cause" the alleged harm does not alter the conclusion that the causation question should be left to the jury. In this connection, we note that, in *Chesterman*, the court did not decide whether, in fact, the employee's ingestion of a hallucinatory drug caused the plaintiff's injury, but left that decision to the jury. *Id.* at 444. The same result is required here.

Having concluded that the allegations of the amended complaint are sufficient to state a claim of vicarious liability against the Archdiocese based on an application of the doctrine of *respondeat superior*, we turn to the question of the timeliness of plaintiff's complaint.

■ Plaintiff initiated the present action, which alleges sexual abuse that occurred more than 20 years before the filing of the complaint, under the extended limitations period for claims based on child abuse contained in ORS 12.117. That statute provides:

> "(1) Notwithstanding [statutory sections not relevant here], an action based on conduct that constitutes child abuse * * * accruing while the person who is entitled to bring the action is under 18 years of age shall be commenced not more than six years after that person attains 18

years of age, or if the injured person has not discovered the injury or the causal connection between the injury and the child abuse, nor in the exercise of reasonable care should have discovered the injury or the causal connection between the injury and the child abuse, not more than three years from the date the injured person discovers or in the exercise of reasonable care should have discovered the injury or the causal connection between the child abuse and the injury, whichever period is longer.

"(2)  As used in subsection (1) of this section, 'child abuse' means any of the following:

"* * * * *

"(c)  Sexual abuse, as defined in ORS chapter 163, when the victim is a child."

At this point in the proceedings, it is undisputed that Bucher's alleged sexual assaults constitute "child abuse" within the definition of that term in ORS 12.117(2)(c) and that the action was brought within three years of plaintiff's discovery of the causal connection between the child abuse and his injuries. The gravamen of the Archdiocese's argument is that the activities alleged to have been within the scope of Bucher's employment, and on which vicarious liability is based, are not themselves alleged to have caused harm and, therefore, are not acts of "child abuse" as that term is defined in ORS 12.117(2)(c). Under those circumstances, according to the Archdiocese, the action against *it* is not an "action based on conduct that constitutes child abuse" under ORS 12.117 and plaintiff is not entitled to avail himself of the extended limitations period provided in that statute.

The Archdiocese's argument is premised on an unduly narrow reading of the statute. The plain wording of the statute allows for an extended limitations period for "actions *based on* conduct that constitutes child abuse." *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993) (first level of statutory interpretation is examination of words legislature chose to use and the context in which they appear; if statutory meaning is clear, no further analysis required). The action here clearly is *based on* child abuse: Were it not for Bucher's alleged sexual abuse of plaintiff, there would be no action. Any damages awarded

plaintiff at the conclusion of the case would be in compensation for his injuries resulting from the child abuse. The fact that the Archdiocese's *vicarious liability* is based on conduct that occurred before the abuse does not alter the nature of the underlying action. The action is not, on the record before us, time-barred as a matter of law.

The decision of the Court of Appeals is reversed in part and affirmed in part. The judgment of the circuit court is reversed in part and affirmed in part, and the case is remanded to the circuit court for further proceedings.