**JC2, ME, FH, PM, BO, BS and TS, Plaintiffs,**

v.

**Maurice GRAMMOND; the Archdiocese of Portland in Oregon, an Oregon corporation; the Roman Catholic Archbishop of Portland in Oregon, and successors, a corporation solo, dba the Archdiocese of Portland in Oregon, Defendants.**

**No. CIV.01–1111–AS.**

United States District Court, D. Oregon.

March 18, 2002.

David L. Slader, David Slader Trial Lawyer, Portland, OR, for Plaintiffs.

Thomas E. Cooney, Cooney & Crew, L.L.C., Portland, OR, for Maurice Grammon, defendant.

Karen O'Kasey, Thomas V. Dulcich, Schwabe Williamson & Wyatt, Portland, OR, for Archdiocese of portland, Roman Catholic Archbishop of Portland, defendants.

## ORDER

ROBERT E. JONES, District Judge.

Magistrate Judge Donald C. Ashmanskas filed Findings and Recommendation (# 24) on December 14, 2001, in the above entitled case. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). When either party objects to any portion of a magistrate judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the magistrate judge's report. *See* 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Defendants have timely filed objections. I have, therefore, given *de novo* review of Magistrate Judge Ashmanskas's rulings.

I find no error. Accordingly, I ADOPT Magistrate Judge Ashmanskas's Findings and Recommendation dated December 13, 2001, in its entirety. Plaintiffs' motion (# 9) to remand is GRANTED.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

ASHMANSKAS, United States Magistrate Judge.

The plaintiffs in this action, designated as JC2, ME, FH, PM, BO, BS and TS (collectively "Plaintiffs"), are all men who were once parishioners of defendants the Archdiocese of Portland in Oregon and the Roman Catholic Archbishop of Portland in Oregon, a corporation sole, doing business as the Archdiocese of Portland in Oregon (collectively "Defendants"). Plaintiffs allege that Maurice Grammond, a Roman Catholic priest who, at all relevant times, was employed as a priest by Defendants, sexually abused them during the period of time they served as Altar Boys. Plaintiffs filed this action for sexual battery against Grammond and the Defendants in the Circuit Court of the State of Oregon for the County of Multnomah. Defendants removed the action to this court asserting that Plaintiffs' complaint "creates crucial First Amendment issues arising from their allegations of a religious-based 'breach of trust.'" Presently before the court is Plaintiffs' motion for remand pursuant to Fed.R.Civ.P. § 1447(c).

## LEGAL STANDARD

Section 1447(c) provides, in part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Only cases that would have had original jurisdiction in a federal district court may be removed from state court. 28 U.S.C. § 1441(a). "Absent diversity of citizenship, federal-question jurisdiction is required." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). There is no diversity jurisdiction in this matter. Thus, the court must determine whether there is federal question jurisdiction over the parties dispute.

Federal courts have original federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331, 1441(b). Normally, cases brought under the general federal question jurisdiction of the federal courts are those in which federal law creates the cause of action. *Merrell Dow Pharmaceuticals,*

*Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Federal courts have recognized, however, that a case may arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law." *Franchise Tax Bd. v. Laborers Vacation Trust,* 463 U.S. 1, 9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

It is clear that the question whether a claim "arises under" federal law must be determined by reference to the "well-pleaded complaint." *Merrell Dow,* 478 U.S. at 808, 106 S.Ct. 3229. Federal question jurisdiction exists only if the federal question appears on the face of plaintiff's complaint; if not, original jurisdiction is lacking, even if the defense is based on federal law. *Id.*

### DISCUSSION

Plaintiffs seek to establish vicarious liability against Defendants for Grammond's sexual abuse of Plaintiffs under the theory of *respondeat superior.* Defendants contend that the resolution of this issue requires the court to review, interpret and consider the religious rules and canons of the Roman Catholic Church, which is barred by the First Amendment. Accordingly, Defendants argue that Plaintiffs' complaint raises federal constitutional issues that must be addressed by a federal court.

Plaintiffs do not dispute that the First Amendment limits the review of internal policies of a church by a secular court, that a federal constitutional issue is raised when the First Amendment is at issue or that this court has federal question jurisdiction over federal constitutional issues. Rather, Plaintiffs contend that the issue of vicarious liability can be resolved without consideration of Defendants' canons or religious rules and that any federal question before the court is limited to Defendants' third affirmative defense.

■ The First Amendment of the United States Constitution, provides that: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof* * *." Courts are similarly restricted in their consideration of issues involving religious organizations or doctrine. Generally, courts may not interpret church laws, policies or practices in a manner that will limit the churches ability to fully practice its religion or be guided by its religious principles. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). However, this does not prevent courts from addressing church-related disputes, provided the court refrains from considering doctrinal matters and resolves the dispute solely on neutral principles. *Jones v. Wolf,* 443 U.S. 595, 604, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979).

In an order granting a stay issued independently by him, Justice Rehnquist summarized the restriction imposed on courts by the First Amendment as follows:

There are constitutional limitations on the extent to which a civil court may inquire into and determine matters of ecclesiastical cognizance and polity in adjudicating intrachurch disputes. But the Court never has suggested that those constraints similarly apply outside the context of such intraorganization disputes. * * * [Some] cases are premised on a perceived danger that in resolving intrachurch disputes the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs. Such considerations are not applicable to purely secular disputes between third parties and a particular defendant, albeit a religious affiliated organization, in which fraud, breach of contract, and statutory violations are alleged.

*General Council v. Superior Court of California,* 439 U.S. 1355, 1372–3, 99 S.Ct. 35, 58 L.Ed.2d 63 (1978).

▆ Courts may not, without justification,[1] force religious bodies to abandon their religious beliefs or doctrines in favor of purely secular rules or rule on the appropriateness or correctness of those beliefs or doctrines. However, the mere consideration of religious authorities in an action involving the church and third parties does not necessarily amount to an infringement of the churches religious freedom. A court may look to such evidence to establish the basic purposes or policies of the religion as merely a guide to determining whether a plaintiff has a viable action against the church.

In order to resolve this controversy, the court must first examine the parameters of the *respondeat superior* liability alleged in Plaintiffs complaint. "Under the doctrine of *respondeat superior,* an employer is liable for the torts of his employee when the employee is acting within the scope of his employment." *Stanfield v. Laccoarce,* 284 Or. 651, 654, 588 P.2d 1271 (1978). In determining whether an employee was acting within the course and scope of his employment, the court applies a three-part test:

> (1) [W]hether the act occurred substantially within the time and space limits authorized by the employment; (2) whether the employee was motivated, at least partially, by a purpose to serve the employer; and (3) whether the act is of a kind which the employee was hired to perform.

*Chesterman v. Barmon,* 305 Or. 439, 442, 753 P.2d 404 (1988).

▆ Generally, an employer will not be held liable for the intentional criminal acts of its employees as these acts are not committed for the benefit of the employer. However, the Oregon Supreme Court has expanded the doctrine of *respondeat superior* to include the intentional criminal acts of employees if the acts that lead to the criminal conduct were within the scope of employment. In *Chesterman,* an employee ingested a hallucinatory drug while on the job to enable him to better focus his attention on work. While under the influence of the drug, the employee broke into the plaintiff's house and sexually assaulted her. The court recognized that the sexual assault itself was outside the scope of employment but reasoned that the appropriate inquiry was whether acts which contributed to the sexual assault were for the benefit of the employer. *Id.* at 444, 753 P.2d 404.

In *Fearing v. Bucher,* 328 Or. 367, 977 P.2d 1163 (1999), the Oregon Supreme Court applied this reasoning to an action similar to the one before the court. The plaintiff, a man who had been ministered to in his youth by the defendant, a catholic priest, was sexually abused by the defendant. The complaint alleged that the defendant used his position as a youth pastor, spiritual guide, confessor and priest to get close to plaintiff and his family allowing him to spend a lot of time alone with the plaintiff and that these activities were conducted in connection with his employment with the church. *Id.* at 374, 977 P.2d 1163. The court held that the allegations were sufficient to "infer that the sexual assaults were the culmination of a progressive series of actions that began with and continued to involve [defendant's] performance of the ordinary and authorized duties of a priest" and that "in cultivating a relationship with plaintiff and his family, [defendant], at least initially, was motivat-

---

**1.** Justification would include enforcement of criminal laws or statutes which are religiously neutral.

ed by a desire to fulfill his priestly duties and that, over time, his motives became mixed." *Id.* at 375, 977 P.2d 1163.

These cases make it clear that the court must know the limits of the employees job duties in order to determine whether he was acting in furtherance of those duties during the relevant period. Accordingly, the court will be required to learn the limits of Grammond's job duties as a priest for Defendants in order to determine whether the actions Plaintiffs allege he engaged in were within the parameters of his employment.

Plaintiffs allege that Grammond's assigned duties as a priest and youth pastor "included providing pastoral and religious ritual services, including, but not limited to, providing spiritual, moral and ethical guidance and religious instruction to the children-parishioners of Defendants." Plaintiffs then allege that, in furtherance of these duties:

> Grammond identified plaintiffs' families as ones with one or more adolescent or pre-adolescent male children; sought and gained the trust and confidence of the boys' parents as friend, spiritual guide, youth pastor, confessor and priest; sought and gained the parents' consent for each plaintiff to serve as an Altar Boy, participate in youth activities, and/or to otherwise spend considerable time alone with him; and sought and gained the parents' directive to the boys that they respect his authority and guidance and comply with his instruction.
>
> \* \* \* \* \* \*
>
> \* \* \* Grammond also sought and gained the plaintiffs' trust, friendship, admiration, and obedience.

Finally, Plaintiffs allege that Grammond used "the power, authority and trust of his position as priest and youth pastor to the plaintiffs and to their parents" to entice, induce, direct and/or coerce each boy to engage in various sexual acts with him.

Plaintiffs claim that Defendants do not dispute Plaintiffs' allegation that a priest's authorized duties include gaining the trust of the children of his parish. In the Answer filed by Defendants on July 31, 2001, they deny Plaintiffs' allegations with regard to Grammond's authorized duties as a priest. In light of this denial, and the arguments made by Defendants in opposition to the motion to remand, it is clear that the extent of Grammond's authorized duties as a priest is an issue that will be contested.

The daily activities of a priest are generally known to his parishioners as a result of their relationship with him and with the church. However, it is impossible to know what acts the church has specifically authorized and directed the priest to engage in simply by watching the priest's routine. One must look more deeply into the relationship between the church and the priest to differentiate between those acts required by the job and those engaged in independently by the priest.

 As with any employer-employee relationship, the parameters of a priest's duties can be discerned by reviewing the "job description" of the priest, in addition to communications between the church and the priest. While this will require the court to consider a number of Defendants' canons delineating the duties of a priest, the court will not need to make any judgment on appropriateness, correctness or validity of any of the canons. The canons will merely define the duties of a priest and the court will then consider whether Grammond's acts of "grooming" fall within this definition. The court will not in any matter limit the priests duties or the ability of the church to supervise Grammond. Accordingly, the consideration by the court of Defendants' canons, or other religious rules, will not infringe in any way upon Defendants' freedom of religion and will not implicate the First Amendment. In

the absence of any constitutional issues, this court lacks jurisdiction over this action and it should be remanded to state court.

## CONCLUSION

Plaintiffs' motion (# 9) to remand should be GRANTED.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due **December 28, 2001**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due **January 11, 2002**, and the review of the Findings and Recommendation will go under advisement on that date.

Dec. 13, 2001.