Submitted on remand from the Oregon Supreme Court February 25, reversed and remanded June 9, petition for review denied October 7, 2010 (349 Or 171)

David SCHMIDT,
*Plaintiff-Appellant,*
*and*

N. M.,
*Plaintiff,*

*v.*

ARCHDIOCESE OF PORTLAND IN OREGON,
an Oregon corporation;
Roman Catholic Archbishop of Portland in Oregon,
dba Archdiocese of Portland in Oregon
and Roman Catholic Archbishop of Portland in Oregon,
and successors, a corporation sole;
Mt. Angel Abbey,
an Oregon not for profit corporation;
and Louis Charvet, deceased,
*Defendants-Respondents,*

*and*

SWISS-AMERICAN CONGREGATION
OF THE ORDO SANCTI BENEDICTI,
*Defendant.*

Multnomah County Circuit Court
020403531; A124850

234 P3d 990

Erin K. Olson argued the cause for appellant. On the opening brief was David Slader. On the reply brief were David Slader, Kelly W.G. Clark, Kristian Roggendorf, and O'Donnell & Clark LLP.

James N. Finn argued the cause for respondents Archdiocese of Portland and Roman Catholic Archbishop of Portland in Oregon. On the brief were Thomas Dulcich, Margaret Hoffmann, Sara Kobak, and Schwabe, Williamson & Wyatt P.C.

John T. Kaempf argued the cause for respondents Mt. Angel Abbey and Louis Charvet. With him on the brief were Richard Whittemore and Bullivant Houser Bailey P.C.

Before Ortega, Presiding Judge, and Armstrong, Judge, and Sercombe, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

In this tort action, plaintiff sought to impose liability on defendants Archdiocese of Portland and Mt. Angel Abbey for the conduct of two priests. This court upheld the trial court's dismissal of plaintiff's claims as time barred. *Schmidt v. Archdiocese of Portland in Oregon*, 218 Or App 661, 180 P3d 160 (2008). The Supreme Court reversed, *Schmidt v. Mt. Angel Abbey*, 347 Or 389, 223 P3d 399 (2009), and the case is here on remand for consideration of plaintiff's remaining assignment of error. Plaintiff contends that the trial court erred in granting Mt. Angel Abbey's motion for summary judgment with respect to the claims involving the conduct of one of the priests, Father Charvet, a former employee of Mt. Angel Abbey.[1] Plaintiff contends that the record on summary judgment is sufficient to create a question of fact as to whether Charvet's conduct was within the scope of his employment so as to provide a basis for imposing vicarious liability. We agree with plaintiff that the trial court erred in granting the motion for summary judgment and reverse and remand.

On review of the trial court's order granting defendant's motion for summary judgment, the facts and all reasonable inferences that may be drawn from them are to be viewed in the light most favorable to plaintiff. ORCP 47 C. We quote from the Supreme Court's opinion summarizing the record as it pertains to the claim involving the conduct of Charvet:

> "In 1958, when plaintiff was a high school freshman at Mt. Angel Seminary, Father Charvet—plaintiff's freshman advisor—asked plaintiff to meet Charvet in his office at a specific time. When plaintiff arrived, Charvet was sitting behind his desk and told plaintiff to stand in front of the desk. Charvet then began questioning plaintiff as to what he knew about sexuality and reproduction. Among other things, Charvet asked plaintiff whether he had ever masturbated and explained to plaintiff 'what that was about.' At that point, Charvet became 'less technical' and began using 'street or gutter talk as opposed to clinical [terms].'

---

[1] As noted by the Supreme Court, 347 Or at 393 n 1, the archdiocese and Charvet are no longer parties on appeal.

> During Charvet's questioning, plaintiff 'could see that there was a lot of motion going on under his cassock,' and, according to plaintiff, it was 'pretty obvious' that Charvet was masturbating. Although Charvet never instructed plaintiff to remain in the room, plaintiff stated that his training as a student in the seminary prevented him from leaving and that he 'felt in a locked situation.' The incident lasted approximately 30 to 45 minutes."

347 Or at 392-93 (brackets in original). The record on summary judgment also contains an affidavit by plaintiff stating that Charvet was the teacher in charge of plaintiff's dormitory and that, when Charvet summoned plaintiff to his office, plaintiff felt that he had no choice but to comply. Plaintiff testified that Charvet's masturbation activity lasted "maybe ten minutes" and occurred near the end of the 30 to 45 minutes that plaintiff was in Charvet's office. Plaintiff testified by deposition that, other than the described incident in the office, he had little contact with Charvet.

■ Plaintiff sought to hold defendant liable for Charvet's conduct on a theory of *respondeat superior*, but the trial court granted defendant's motion for summary judgment. On appeal, plaintiff contends that there is evidence from which a jury could find that Charvet's misconduct occurred in the course of his employment, thereby giving rise to a claim based on *respondeat superior*. Because we determined in our first opinion that the claim was time barred because evidence was lacking from which a jury could find that Charvet's actions met the definitions of "child abuse" for purposes of ORS 12.117, we did not address vicarious liability or the doctrine of *respondeat superior* with respect to Charvet's conduct. We did, however, address that issue in the context of determining whether the evidence was sufficient to create a question of fact regarding vicarious liability for the conduct of another priest, Father Frank. 218 Or App at 689.

■■ As we explained in our first opinion, under the doctrine of *respondeat superior*, an employer is vicariously liable for an employee's tortious conduct, including intentional torts, when the employee acts within the scope of employment. *Id*. The Supreme Court's opinion in *Chesterman v. Barmon*, 305 Or 439, 753 P2d 404 (1988), outlines three requirements that must be met in order to establish that the

employee's conduct was within the scope of employment: (1) the conduct must have occurred substantially within the time and space limits authorized by the employment; (2) the employee must have been motivated, at least partially, by a purpose to serve the employer; and (3) the act must have been of a kind that the employee was hired to perform. *Id.* at 442. Although, in *Chesterman*, the court held that the intentional tort itself unquestionably was outside the scope of employment, *id.* at 443, the court stated that "[t]he focus should be on the *act* on which vicarious liability is based and not on when the act results in *injury*." *Id.* at 444 (emphasis in original).

In *Fearing v. Bucher*, 328 Or 367, 977 P3d 1163 (1999), the court noted that "an employee's intentional tort rarely, if ever, will have been authorized expressly by the employer. In that context, then, it virtually always will be necessary to look to the acts that led to the injury to determine if *those* acts were within the scope of employment." *Id.* at 373-74 n 4 (emphasis in original). In *Fearing*, the question was whether the Archdiocese of Portland was vicariously liable for the conduct of a priest, Bucher, when he allegedly sexually abused the plaintiff. The court stated that, although the sexual assaults themselves were outside the scope of Bucher's employment, the archdiocese could still be found vicariously liable if acts that were within Bucher's scope of employment resulted in the acts which led to the plaintiff's injury. *Id.* at 374. The court stated that whether an employee has acted within the scope of employment at any given time generally is a question for the trier of fact, except in cases where only one reasonable conclusion may be drawn from the facts pled. *Id.*

In *Fearing*, the trial court had dismissed the claim on the pleadings; the Supreme Court thus inquired whether the allegations of the amended complaint stated ultimate facts sufficient to establish that acts within Bucher's scope of employment resulted in the acts that caused injury to the plaintiff. *Id.* The court held that the allegations of the complaint were sufficient to satisfy all three *Chesterman* requirements: The allegations were sufficient to allow a jury to infer that the sexual assaults "were the culmination of a progressive series of actions that began with and continued

to involve" Bucher's performance of his ordinary and author-
ized pastoral duties; that Bucher's conduct in cultivating a
trust relationship with the plaintiff was motivated, at least in
part, by a desire to further the interests of the archdiocese;
and that the conduct led to the sexual assaults. *Id.* at 375.
The court rejected the archdiocese's argument that the alle-
gations of the complaint demonstrated only that that priest's
employment gave him the opportunity to commit the alleged
assault but were not the cause of the plaintiff's injury. The
court explained that a reasonable jury could infer that the
priest's performance of his pastoral duties "were a necessary
precursor to the sexual abuse and that the assaults thus were
a direct outgrowth of and were engendered by conduct that
was within the scope of Bucher's employment." *Id.* at 377.
Thus, the court held that a jury could find that the necessary
connection to the employment arose from the priest's per-
formance of his pastoral duties.

This case is here on summary judgment. As we
stated in our first opinion with respect to Frank's conduct,
the question is whether the record on summary judgment
contains facts from which a jury could find that acts that
were within the scope of the priest's employment resulted in
the acts that caused injury to plaintiff. 218 Or App at 690. We
agree with Judge Edmonds's conclusion in his separate con-
curring and dissenting opinion, 218 Or App at 697-98, that,
giving plaintiff the benefit of all reasonable inferences, the
case presents a question of fact for the jury as to whether acts
that were within the scope of Charvet's employment resulted
in the acts that caused plaintiff's injury.

The record shows that Charvet was plaintiff's fac-
ulty advisor and dormitory proctor and that he asked plain-
tiff to meet with him in his office during a time when he had
authority over plaintiff. There is evidence that the allegedly
abusive conduct occurred during the last 10 minutes of a
30- to 45-minute encounter. A jury could reasonably find that
the act of counseling plaintiff on the subjects of sexuality and
reproduction was within the scope of Charvet's authority and
responsibility and that, as plaintiff's faculty advisor and dor-
mitory proctor, Charvet was partially motivated, at least ini-
tially, to fulfill those employment duties. A jury also could
reasonably infer that the alleged abusive conduct resulted

from the employment-related conduct. We thus conclude that the record on summary judgment gives rise to questions of fact as to whether acts within the scope of Charvet's employment resulted in plaintiff's injuries.

■     In defendant's view, *Chesterman* and *Fearing* have drawn a narrow exception around a general rule that sexual assaults are not within the scope of employment and that, in order to give rise to a triable question of fact as to vicarious liability, the record must contain evidence of a pattern of grooming over a lengthy period of time or that the defendant used or manipulated a position of trust to ingratiate himself with the plaintiff or to create an opportunity for sexual abuse. We reject that contention. Although the court held in *Fearing* that such facts would be *sufficient* to establish the connection between the employment and the abuse, 328 Or at 377, we do not think that the case stands for the rule that an employment connection is established *only* by such conduct. The necessary employment connection is established by evidence that acts within the defendant's employment resulted in the acts that caused the plaintiff's injury. *Id.* at 374. Here, as we have concluded, the record on summary judgment contains evidence from which a jury could find that acts that were within the scope of Charvet's employment—the private counseling of plaintiff—culminated in abuse. We therefore conclude that the trial court erred in granting defendant's motion for summary judgment.

Reversed and remanded.