Argued and submitted April 12, 2013, reversed and remanded May 29, petition for review denied December 11, 2014 (356 Or 574)

David SCHMIDT,
*Plaintiff-Appellant,*
*v.*

David SLADER,
*Defendant-Respondent.*

Multnomah County Circuit Court
100303770; A148950

327 P3d 1182

Corey B. Toliver argued the cause for appellant. With him on the opening brief was Powers, McCulloch & Bennett, LLP. With him on the reply brief was Folawn Alterman & Richardson LLP.

Michael J. Fearl, Lee Aronson, and Schulte, Anderson, Downes, Aronson & Bittner P.C. filed the brief for respondent.

Before Ortega, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

In this legal malpractice case, plaintiff challenges the trial court's grant of summary judgment in favor of defendant, David Slader, the attorney who represented plaintiff in his child sex abuse case against the Archdiocese of Portland and Mt. Angel Abbey.[1] In that case, defendant alleged that the Archdiocese was vicariously liable for acts of abuse by a priest. The Archdiocese filed a summary judgment motion that the trial court granted, and we affirmed on appeal. In his malpractice claim against defendant, plaintiff alleged that, but for defendant's negligence in failing to properly investigate and discover additional evidence, the Archdiocese would not have prevailed on summary judgment. Defendant moved for summary judgment, arguing that plaintiff could not prove the "causation" element of his malpractice claim because the trial court in the underlying case would have granted summary judgment in favor of the Archdiocese even if defendant had presented the evidence that plaintiff now proffers. The trial court agreed and granted defendant's motion. On appeal, we conclude that the court erred in granting summary judgment, and therefore reverse and remand for further proceedings.

On review of a grant of summary judgment, this court views the record and all reasonable inferences in the light most favorable to the nonmoving party—here, plaintiff—to determine if a genuine issue of material fact exists and if the moving party is entitled to judgment, as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

The relevant facts, stated consistently with that standard, are as follows.[2] In 2002, plaintiff hired defendant

---

[1] For the sake of simplicity, we refer to these parties collectively as "the Archdiocese."

[2] In his third assignment of error, plaintiff contends that the trial court erred in striking what it considered to be speculative statements in plaintiff's proffered evidence. Because we conclude that plaintiff's evidence is sufficient to create a genuine issue of material fact with regard to causation even without the stricken statements, we do not address the trial court's ruling on the motion to strike. Our recitation of facts does not include the stricken statements.

to represent him in a suit against the Archdiocese, based on plaintiff's allegations that, in the early 1950s, a priest, Father Frank, had sexually assaulted him when he was seven or eight years old.[3] Defendant filed suit against the Archdiocese, alleging that it was vicariously liable for that assault because Frank had been employed by the Archdiocese to provide "pastoral and religious services, education, training, spiritual, moral and ethical guidance" to plaintiff; Frank had used his position as a pastor to "gain the trust and confidence of the plaintiff[] and [his] parents"; and those "'grooming' activities were within the course and scope of [Frank's] employment" and "eventually led to a series of sexual assaults."

The Archdiocese moved for summary judgment, claiming that Frank's conduct was not within the scope of his employment for purposes of vicarious liability because the sexual abuse occurred within minutes of plaintiff's first-ever encounter with Frank. The Archdiocese argued that, unlike in *Fearing v. Bucher*, 328 Or 367, 977 P2d 1163 (1999), where there was evidence of "grooming" behavior, this case lacked evidence that Frank seduced, or even knew plaintiff or his family before the assault.

In response, plaintiff, represented by defendant, argued that the test is "whether there is a causal link between the employee's authorized duties and his *** tortious injury of the plaintiff[]," not whether the tortfeasor "seduced" the victim. Defendant contended that Frank had been acting within his scope of employment because "Catholic priests are expected and required to secure the obedience of the children of their parish or school" and, in leading plaintiff to the basement, Frank was "fulfilling the role of a caring pastor" and plaintiff was at his mercy because Frank "had

---

[3] In 1999, after working with a mental health counselor, plaintiff remembered that Frank had sexually assaulted him. Specifically, plaintiff remembered roller skating with several friends and his siblings near St. Mary's Church in the town of Mt. Angel. According to plaintiff, he fell down and scraped his knees, and Frank, who was wearing his robes, offered to help him. Frank helped plaintiff into the basement of the church, sat him on a table, and asked him to "take [his] jeans down so that he could look at [his] scraped knees." According to plaintiff, he voluntarily complied and Frank began fondling his penis through his underwear, assuring him that "his caressing would help [his] knees to feel better." Shortly thereafter, Frank violently sodomized plaintiff.

the absolute authority of a priest." In sum, defendant argued that a jury could find, "in the words of the court in *Fearing*, that the sexual assaults were a direct outgrowth of and were engendered by conduct that was within the scope of [Frank's] employment."

As noted, the trial court granted summary judgment to the Archdiocese on that claim, concluding that, under *Fearing*, the evidence was insufficient as a matter of law to support vicarious liability under the doctrine of *respondeat superior*.

Plaintiff appealed in the underlying case, and we affirmed the trial court's decision. *Schmidt v. Archdiocese of Portland in Oregon*, 218 Or App 661, 696, 180 P3d 160 (2008), *rev'd on other grounds sub nom Schmidt v. Mt. Angel Abbey*, 347 Or 389, 223 P3d 399 (2009). We concluded that "the record is devoid of evidence that, before the alleged assault, Frank performed pastoral duties in relation to plaintiff or his family that then led to the conduct that caused plaintiff's alleged injuries." *Id.* at 694. In the alternative, we concluded that the record lacked any direct evidence from which a jury could find that Frank's conduct, immediately preceding the alleged sexual assault, was "motivated, initially or in part, to serve the [A]rchdiocese." *Id.* at 695. The Supreme Court accepted review of our decision but, on review, declined to address the issue of *respondeat superior* liability as related to Frank's conduct, instead addressing only allegations related to another priest working at Mt. Angel Abbey. 347 Or at 393 n 1.

Thereafter, in 2010, plaintiff sued defendant for legal malpractice, alleging that defendant negligently represented him by pursuing a "grooming" theory without presenting available evidence that plaintiff knew Frank before he was sexually assaulted. Plaintiff alleged that defendant had not properly investigated and provided evidence to support the allegations that he made in the complaint filed against the Archdiocese. Specifically, plaintiff alleged that defendant was negligent in one or more of the following respects:

"a. [Defendant] failed to investigate the history of *** Frank with plaintiff, plaintiff's associates, and plaintiff's family;

"b. [Defendant] failed to present available evidence about *** Frank's history with plaintiff, plaintiff's associates, and plaintiff's family;

"c. [Defendant] failed to reasonably investigate the very allegations describing the relationship between plaintiff and *** Frank which defendant alleged for plaintiff as set forth in paragraph 8[4] [of the complaint]."

Defendant moved for summary judgment, arguing that any alleged negligence could not have caused plaintiff damage because, even if he had gathered all of the evidence that plaintiff now says should have been adduced, the Archdiocese still would have been awarded summary judgment because even that evidence would have been insufficient to impose vicarious liability on the Archdiocese. Specifically, defendant argued that Frank's prior contact with plaintiff and his family could not have been a "necessary precursor" to plaintiff's rape because plaintiff has "no memory of what actually motivated him to go along with [Frank] to the parish basement," and he cannot say "that it had anything to do with a prior relationship with *** Frank." Defendant further contended that, because plaintiff had said that he would have gone into the basement with any priest whom he knew and trusted, his relationship with Frank specifically "could not have been a 'necessary precursor'" to the assault. Defendant also argued that the "grooming" relationship described in *Fearing* is the "antithesis

---

[4] Paragraph 8 of plaintiff's complaint contains a quoted section of the complaint that defendant filed in the underlying case. That quoted allegation reads, in part:

"As part of *** Frank's duties as Parish Priest, he was responsible for providing plaintiff with spiritual, moral, and ethical guidance and religious instruction. For the purpose of furthering those and other duties as parish priest, *** Frank:

"a) sought and gained the trust and confidence of plaintiff's parents as their friend, spiritual guide, pastor, confessor, and priest;

"b) sought and gained from plaintiff's parents their directive to plaintiff that he respect *** Frank's authority and guidance, comply with his instruction, and treat him in all respect as God's representative on Earth; and

"c) sought and gained plaintiff's trust, admiration and obedience."

of an explosive, indiscriminate attack of the kind that plaintiff describes ***"—*i.e.*, a forcible rape that was not preceded by any grooming.

In response, plaintiff presented declarations from three of his sisters. Those declarations stated that, *before* the rape, Frank had been in the Mt. Angel community for several years and had developed a close relationship with plaintiff and his family. Specifically, the declarations stated that Frank frequently visited plaintiff's family home; that he spent time alone with plaintiff and his siblings; that he frequently walked alone with plaintiff; that he spent more time with plaintiff's family than did other priests; and that plaintiff, at six or seven years old, had served as an altar boy under Frank's supervision. Plaintiff contended that this additional evidence would have supported the conclusion that "Frank performed pastoral duties as a precursor to the sexual misconduct, and the offensive conduct of *** Frank was a culmination of a progressive series of actions engendered by and an outgrowth of *** Frank's performance of his ordinary and usual church duties." Plaintiff argued that, with the additional evidence, the facts of his case are indistinguishable from those in *Fearing* and, therefore, it follows that, but for defendant's negligence in failing to elicit that evidence, the trial court would not have granted summary judgment to the Archdiocese.

Ultimately, the trial court was not persuaded by those arguments, and it granted defendant's motion. The trial court ruled that "there is no basis upon which to impose vicarious liability against the Archdiocese" for Frank's sexual assault of plaintiff.

On appeal, the parties generally reiterate the arguments that they made to the trial court. Thus, the issue before us is a narrow one.

> "In the traditional legal malpractice action, as in other tort actions in which there is a special relationship between the plaintiff and the defendant, the plaintiff usually must allege and prove: (1) a *duty* that runs from the defendant to the plaintiff; (2) a *breach* of that duty; (3) a resulting *harm* to the plaintiff measurable in damages; and (4) *causation*, *i.e.*, a causal link between the breach of duty and the harm."

*Stevens v. Bispham*, 316 Or 221, 227-28, 851 P2d 556 (1993) (emphasis in original). For purposes of defendant's summary judgment motion and, thus, for purposes of appeal, the sole issue is the causation element of plaintiff's malpractice claim. Specifically, in order to obtain summary judgment, defendant here was required to show that, even if he had presented on plaintiff's behalf the additional evidence against the Archdiocese that plaintiff now proffers in this case, the trial court nevertheless still would have granted summary judgment to the Archdiocese. Because the issue raised in defendant's motion for summary judgment was limited to whether plaintiff would have survived summary judgment in the underlying litigation, that is the argument plaintiff must defeat at this stage of the litigation. *See Two Two v. Fujitec America, Inc.*, 355 Or 319, 326, 325 P3d 707 (2014) ("Parties seeking summary judgment must raise by motion the issues on which they contend they are entitled to prevail as a matter of law.").

Whether plaintiff's additional evidence would have been sufficient to successfully defend against the Archdiocese's motion for summary judgment is a question of law, *Chocktoot v. Smith*, 280 Or 567, 575, 571 P2d 1255 (1977), which turns on the application of the doctrine of *respondeat superior*. Generally, under that doctrine, an employer is vicariously liable for the tortious acts of an employee only when those acts are committed within the course and scope of his authorized job duties. *Chesterman v. Barmon*, 305 Or 439, 442, 753 P2d 404 (1988). It is not sufficient to show that the employment merely "brought the tortfeasor and the victim together in time and place and, therefore, gave the tortfeasor the 'opportunity' to commit the assault[]." *Fearing*, 328 Or at 377 (explaining *G. L. v. Kaiser Foundation Hospitals, Inc.*, 306 Or 54, 757 P2d 1347 (1988)). Rather, to establish that an employee acted within the course and scope of employment, the plaintiff must prove that three conditions are satisfied:

> "(1) the conduct must have occurred substantially within the time and space limits authorized by the employment; (2) the employee must have been motivated, at least partially, by a purpose to serve the employer; and (3) the act

must have been of a kind that the employee was hired to perform."

*Fearing*, 328 Or at 373 (citing *Chesterman*, 305 Or at 442).

In *Fearing*, a case addressing the vicarious liability of the Archdiocese, the plaintiff alleged that a priest used his position as "youth pastor, friend, confessor, and priest," 328 Or at 372, for the plaintiff and his family to gain their trust and confidence, thereby enabling him to "spend large periods of time alone with plaintiff, physically touch plaintiff, and, ultimately, to gain the opportunity to commit the sexual assaults upon him."[5] 328 Or at 377. The court considered whether the plaintiff's complaint contained allegations sufficient to state a claim against the Archdiocese for vicarious liability for the priest's tortious conduct. In holding that the complaint was sufficient, the court first noted that the priest's tortious conduct—the sexual assaults—was clearly outside his scope of employment, but that the inquiry regarding vicarious liability did not end there. *Id*. at 374. The court continued its analysis, determining that there was an issue as to whether the priest's acts, with respect to cultivating trust with the plaintiff and his family, were within the scope of the priest's employment and whether those actions *led to* the sexual assaults. *Id*. The court explained that

"[a] jury reasonably could infer that [the priest's] performance of his pastoral duties with respect to plaintiff and his family were a *necessary precursor* to the sexual abuse and that the assaults thus were a direct outgrowth of and were engendered by conduct that was within the scope of [his] employment."

*Id*. at 377 (emphasis added). Accordingly, the court held that, even though a jury could determine that the priest's efforts "to cultivate a trust relationship with plaintiff did not 'cause' the alleged harm," the jury could also conclude

---

[5] In *Lourim v. Swensen*, 328 Or 380, 977 P2d 1157 (1999), the court was presented with similar material facts as in *Fearing*, involving abuse by a Boy Scout troop leader. As in *Fearing*, the court held that the plaintiff had stated a claim for vicarious liability based on the doctrine of *respondeat superior* because the jury could infer that the tortfeasor had performed actions that were part of his duties as a Boy Scout leader and that those actions, which resulted in a relationship with plaintiff and his family, were a necessary precursor to the sexual abuse. *Id*. at 386-87.

that the "trust relationship" *did* cause the harm and, therefore, the question of causation should be left to the jury. *Id.*

As the court explained, the relevant question is not whether the intentional tort itself was committed with the express consent of an employer or in furtherance of any interest of the employer. *Id.* at 373 n 4. Rather, the focus of the analysis is directed at whether there is evidence of acts that were within the scope of the employment that, in turn, "*resulted in* the acts that caused injury to plaintiff." *Id.* at 374 (emphasis added).

In light of *Fearing*, we conclude that if defendant had presented, in the underlying case against the Archdiocese, the evidence now proffered by plaintiff, that evidence would have created a genuine issue of material fact as to whether Frank's actions in the context of his relationship with plaintiff and his family were a "necessary precursor" to plaintiff's sexual abuse. We first note that, as in *Fearing*, there is no doubt that, when Frank sexually assaulted plaintiff, he was not acting within the scope of his employment. However, as in *Fearing*, "[t]he Archdiocese still [can] be found vicariously liable, if the acts that were within [Frank's] scope of employment 'resulted in the acts which led to injury to plaintiff.'" *See Fearing*, 328 Or at 374 (quoting *Chesterman*, 305 Or at 443). Therefore, we focus on whether there is sufficient evidence in the summary judgment record that Frank's actions preceding the sexual assault were within the scope of his employment and whether those actions constituted a "necessary precursor" to plaintiff's injuries.

Viewed in the light most favorable to plaintiff, the summary judgment record contains evidence that Frank was frequently at plaintiff's family home, that Frank was allowed to spend time alone with plaintiff and his siblings, that Frank frequently walked alone with plaintiff, that Frank spent more time with plaintiff's family than did other priests, and that plaintiff served as an altar boy under Frank's supervision when he was six or seven years old.[6] Whereas the record that defendant created in the

---

[6] Defendant argues that plaintiff's testimony about when he became an altar boy is inconsistent and that, therefore, under the *Henderson-Rubio* rule, that testimony cannot create an issue of fact. *Henderson-Rubio v. May Dept Stores*, 53

underlying case was "devoid of any evidence that Frank had cultivated * * * [a] relationship with plaintiff or his family before he assaulted plaintiff," *Schmidt*, 218 Or App at 694, the evidence that plaintiff now proffers would allow a reasonable juror to infer that Frank had developed a close and trusting relationship with plaintiff and his family *before* the assault. Based on that evidence, a jury could infer that, as in *Fearing*, Frank's contact with plaintiff and his family was, at least initially, motivated by his desire to fulfill his priestly duties to the Archdiocese, particularly if a jury finds that plaintiff served as an altar boy under Frank's supervision. A jury could also infer that, by virtue of the time that Frank spent with plaintiff and plaintiff's family, he developed a relationship of trust with plaintiff that enabled him to lead plaintiff into the basement of the church. Furthermore, a reasonable juror could infer that that trust relationship was a "necessary precursor" to plaintiff's acquiescence, without question, to removing his pants and allowing Frank to fondle his penis, which led to the violent rape.

Defendant argues that the evidence offered by plaintiff establishes nothing more than "the type of ordinary relationship that the family had with every parish priest." Contrary to defendant's suggestion, the evidence that plaintiff trusted other priests and would have gone into the church basement with any priest that he knew and liked does not somehow preclude the possibility—which may be inferred from the evidence here—of a special relationship between Frank and plaintiff which served as a "necessary precursor" to the rape. As plaintiff correctly points out, "[a] reasonable juror could find that plaintiff only took his jeans down and allowed Frank to fondle his penis because of the very close, personal, trusting relationship and friendship that Frank had spent years cultivating with plaintiff."

Defendant also argues that plaintiff's additional evidence "still does not meet the 'necessary precursor' test because a violent rape is not a natural risk inherent in the

---

Or App 575, 584-85, 632 P2d 1289 (1981). Specifically, defendant points out that plaintiff stated four times, three of which were under oath, that he did not begin serving as an altar boy until *after* the rape had occurred, but later alleged that he had served as an altar boy under Frank's supervision *before* the rape. However, plaintiff's sisters' declarations provide additional bases for a reasonable juror to conclude that plaintiff's service as an altar boy preceded the rape.

job of a priest performing his ordinary pastoral duties." As we understand it, when defendant uses the term "natural risk," he means that "violent rape" is not a "reasonable foreseeable" risk inherent in the job of a priest. We are not persuaded. As we have stated, "direct causation, not 'reasonable foreseeability' * * * is the *sine qua non* of *respondeat superior* liability." *Bray v. American Property Management Corp.*, 164 Or App 134, 141, 988 P2d 933 (1999), *rev den*, 164 Or App 134 (2000). The issue is not whether a jury could find that violent rape is a "natural risk inherent in the job of a priest," but, rather, whether Frank's prior relationship with plaintiff and his family was developed while Frank was acting within the course and scope of his employment and whether that prior relationship was a "necessary precursor" to or "resulted in" plaintiff's injuries. *See Fearing*, 328 Or at 377.

As noted above, the fact that a reasonable jury could disbelieve plaintiff's evidence that, before the assault, Frank established a trust relationship with plaintiff and his family and plaintiff served as an altar boy under Frank's supervision, and could therefore conclude that actions taken within the scope of Frank's employment did not "cause" the alleged harm, "does not alter the conclusion that the causation question," with regard to plaintiff's malpractice case against defendant, should be left to the jury.

Had defendant presented such evidence, the underlying case would have survived summary judgment and, as a consequence, defendant was not entitled to summary judgment in this legal malpractice case. The trial court erred in ruling otherwise.

Reversed and remanded.