******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

# JOHN DOE #2 ET AL. *v.* ROBERT RACKLIFFE
## (SC 20420)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

The seven plaintiffs filed six separate actions in 2014 or 2015, seeking to recover damages from the defendant pediatrician for personal injuries they sustained as a result of the defendant's alleged sexual abuse when they were his minor patients in the 1970s and 1980s. The plaintiffs alleged that the defendant's practice of digitally penetrating their anuses during their annual physical examinations constituted both intentional sexual assault and medical negligence, and certain plaintiffs also alleged intentional and negligent infliction of emotional distress. The defendant moved for summary judgment as to the counts of the complaints sounding in negligence on the ground that those claims were barred by the two to three year limitation period contained in the statute (§ 52-584) pertaining to negligence and malpractice actions. The trial court granted the defendant's motions for summary judgment as to the negligence counts, concluding that, because they alleged causes of action arising out of medical conduct, § 52-584 applied rather than the extended statute of limitations (§ 52-577d) applicable to actions for damages to minors caused by sexual assault, abuse or exploitation, which permits such actions to be brought within thirty years from the date the person attains the age of twenty-one. After withdrawing the remaining counts alleging sexual assault and intentional infliction of emotional distress, the plaintiffs appealed. *Held* that the extended limitation period set forth in § 52-577d did not apply to the plaintiffs' claims for injuries arising from medical negligence and negligent infliction of emotional distress, unaccompanied by an originating act of intentional misconduct, and, therefore, the plaintiffs' negligence claims were governed by the limitation period set forth in § 52-584; in light of the language and legislative history of § 52-577d, this court concluded that the limitation period set forth in § 52-577d, which was part of a legislative initiative to address the rights of crime victims, does not apply to negligence claims that do not arise out of harm caused by the intentional sexual abuse, exploitation, or assault of a minor.

Argued February 20—officially released December 15, 2020**

*Procedural History*

Six actions to recover damages for, inter alia, the defendant's alleged sexual assault of the minor plaintiffs, and for other relief, brought to the Superior Court in the judicial district of Hartford and transferred to the Superior Court in the judicial district of New Britain, where the court, *Young, J.*, granted in part the defendant's motion for summary judgment as to the named plaintiff; thereafter, the court, *Young, J.*, granted the plaintiffs' motions to substitute William J. Forbes, executor of the estate of Robert Rackliffe, as the defendant; subsequently, the court, *Young, J.*, granted the substitute defendant's motions for summary judgment as to certain counts of the complaints, and the plaintiffs withdrew the remaining counts of the complaints; thereafter, the court, *Morgan, J.*, granted the plaintiffs' motions to consolidate the cases, and the court, *Young, J.*, rendered judgments for the substitute defendant, from which the plaintiffs appealed. *Affirmed.*

*A. Ryan McGuigan*, with whom were *Thomas A. Plotkin* and, on the brief, *Joseph B. Burns* and *Nathan C. Favreau*, for the appellants (plaintiffs).

*Logan A. Carducci*, with whom were *Laura Pascale Zaino*, *William J. Sweeney*, *Jr.*, and, on the brief, *Richard C. Tynan*, for the appellee (substitute defendant).

*Opinion*

ECKER, J. The sole issue in this appeal[1] is whether the extended statute of limitations in General Statutes § 52-577d[2] applies to negligence claims for personal injuries brought against the alleged perpetrator of a sexual assault. The seven plaintiffs[3] in these six consolidated cases appeal from the decision of the trial court rendering summary judgment in favor of the defendant, William J. Forbes, as executor of the estate of Robert Rackliffe,[4] on the ground that the plaintiffs' negligence claims were time barred. The plaintiffs, each of whom were minors at the time of the alleged assaults, contend that the trial court improperly applied the general negligence statute of limitations in General Statutes § 52-584 to their claims alleging medical negligence and negligent infliction of emotional distress instead of the extended limitation period set forth in § 52-577d. We disagree and, accordingly, affirm the judgments of the trial court.

The record reveals the following pertinent facts and procedural history. The plaintiffs were minor patients of Rackliffe, a pediatrician practicing in New Britain, from the early 1970s to the 1980s. The plaintiffs allege that, during their annual physical examinations, Rackliffe digitally penetrated each plaintiff's anus. Several of the male plaintiffs additionally allege that Rackliffe fondled their genitals. Each plaintiff claims that he or she has suffered physical and emotional injuries as a result of Rackliffe's actions.

All seven plaintiffs allege that Rackliffe's conduct constituted both intentional sexual assault and medical negligence. In the medical negligence counts, the plaintiffs each allege that Rackliffe knew or, in the exercise of reasonable care, should have known that his actions violated the standard of care applicable to a pediatrician. Attached to each complaint were a certificate of good faith and an accompanying opinion letter of a similar health care provider pursuant to General Statutes § 52-190a (a). Several plaintiffs also included claims alleging intentional infliction of emotional distress and negligent infliction of emotional distress.[5] In all six actions, the defendant sought summary judgment as to the counts sounding in negligence.[6]

The defendant argued in his motions for summary judgment that the counts sounding in negligence were time barred by § 52-584 because the actions were commenced more than three years after the alleged injurious acts occurred. In three separate memoranda of decision, the trial court granted summary judgment as to all of the negligence counts.[7] The court reasoned that those counts alleged a cause of action arising out of medical conduct, not sexual assault, abuse or exploitation, as required by § 52-577d. The court rejected the plaintiffs' reliance on this court's decision in *Doe* v. *Boy Scouts*

*of America Corp.*, 323 Conn. 303, 147 A.3d 104 (2016), as well as certain decisions of the Superior Court, holding that § 52-577d applies to claims that third parties negligently failed to take precautions to protect children from sexual abuse, exploitation or assault perpetrated by an intentional wrongdoer. The court distinguished those cases on the ground that, unlike the negligence claims in the present case, the claims of negligence in the third-party negligence cases arose out of injuries caused by acts of intentional sexual misconduct.

After the trial court granted partial summary judgment in all six actions, the plaintiffs withdrew the counts alleging sexual assault and intentional infliction of emotional distress. The trial court subsequently granted the plaintiffs' motions to consolidate the cases for purposes of appeal. This appeal followed.

The question whether § 52-577d applies to claims sounding in negligence brought against an alleged perpetrator of child sexual assault presents a question of statutory interpretation subject to plenary review. See, e.g., *Commissioner of Emergency Services & Public Protection* v. *Freedom of Information Commission*, 330 Conn. 372, 382, 194 A.3d 759 (2018); *Barrett* v. *Montesano*, 269 Conn. 787, 792, 849 A.2d 839 (2004). In construing the relevant statutes, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Testa* v. *Geressy*, 286 Conn. 291, 308, 943 A.2d 1075 (2008).

We begin, of course, with the text of the statutes in light of the relevant statutory framework. See General Statues § 1-2z. If the text and pertinent statutory context lead to a clear and unambiguous meaning, then our interpretive task is finished. See General Statues § 1-2z ("[i]f, after examining such text and considering [its] relationship [to the broader statutory scheme of which it is a part] the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered"). "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Tarnowsky* v. *Socci*, 271 Conn. 284, 287 n.3, 856 A.2d 408 (2004).

A review of the relevant statutes of limitations, and the way those statutes interrelate, supplies useful background. General Statutes § 52-577, sometimes referred to as our "general tort statute of limitations,"[8] provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Section 52-584, which governs negligence claims in particular, provides in relevant part: "No action to recover damages for injury to the person . . . caused by negligence . . . or by malpractice of a physician . . . shall be brought but within two years

from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . .”

These two statutes together establish the basic scheme applicable to the vast majority of tort cases in Connecticut. The three year limitation period in § 52-577 applies to all tort actions except (1) negligence claims, which are governed by § 52-584, and (2) tort claims governed by a specialized statute of limitations.[9] See *Doe* v. *Boy Scouts of America Corp.*, supra, 323 Conn. 333 n.20 (“[t]his court previously has held that ‘[t]he [three year] limitation of § 52-577 is applicable to all actions founded upon a tort which do not fall within those causes of action carved out of § 52-577 and enumerated in § 52-584 or another section’ ”). Put simply, the general rule in Connecticut is that intentional torts, unless subject to a specialized statute of limitations, are governed by the three year statute of limitations in § 52-577; see, e.g., *Watts* v. *Chittenden*, 301 Conn. 575, 582–83, 22 A.3d 1214 (2011); whereas torts based in negligence generally are subject to the two year statute of limitations in § 52-584.

This brings us to § 52-577d, a specialized statute of limitations that creates an extended limitation period for personal injury claims arising from sexual misconduct involving victims under the age of majority. Cf. footnote 2 of this opinion. Specifically, § 52-577d provides: “Notwithstanding the provisions of section 52-577, no action to recover damages for personal injury to a minor, including emotional distress, caused by sexual abuse, sexual exploitation or sexual assault may be brought by such person later than thirty years from the date such person attains the age of majority.” The question in the present case is whether this statutory exception encompasses negligence claims that do not arise out of harm caused by the intentional sexual abuse, sexual exploitation or sexual assault of a minor.

Although we have never previously addressed this precise question, we do not write on an altogether clean slate with regard to the application of § 52-577d to claims of negligence. In *Boy Scouts of America Corp.*, we considered whether the extended limitation period in § 52-577d applied to a negligence claim brought in 2012 by a former troop member who alleged that the Boy Scouts organization had failed to take adequate precautions to prevent an adult troop leader from sexually abusing the plaintiff in the 1970s, when the plaintiff was a minor. *Doe* v. *Boy Scouts of America Corp.*, supra, 323 Conn. 308–309, 311. The defendant contended that the negligence claim was time barred because § 52-577d “applies only to *intentional* torts, i.e., to claims against the perpetrator of a sexual assault on a minor, while § 52-584 continues to apply to claims against parties whose

negligent conduct is alleged to have caused injury to the plaintiff when he was a minor." (Emphasis in original.) Id., 331. We rejected that claim and concluded that the legislature intended the extended limitation period to encompass negligence claims against parties whose carelessness enables an intentional wrongdoer to perpetrate the sexual abuse, exploitation or assault of a minor. Id., 333–40.

The plaintiffs in the present case argue that our holding in *Boy Scouts of America Corp.* is dispositive of their claims and requires reversal. Their logic is a model of simplicity: their claims are not time barred because they sound in negligence, and *Boy Scouts of America Corp.* held that negligence claims fall within the scope of § 52-577d. The superficial appeal of this argument disappears, however, when we focus on an essential distinction between the cases. The issue in *Boy Scouts of America Corp.* was whether the extended statute of limitations in § 52-577d applied to claims of negligence against third parties *arising out of an underlying act of intentional sexual misconduct*, namely, the troop leader's sexual abuse of the minor plaintiff. Id., 331. Indeed, the causal nexus connecting the allegations of negligence to injuries resulting from an originating act of intentional misconduct was the pivotal point in our reasoning. We held that the reach of the statute was determined by reference to its purpose in "providing a recovery for a particular type of injury, namely, 'personal injury to a minor, including emotional distress, *caused by sexual abuse, sexual exploitation or sexual assault* . . . .' " (Emphasis altered.) Id., 334. This point highlights what distinguishes the issue decided in *Boy Scouts of America Corp.* from the legal claim made by the plaintiffs in the present case because the plaintiffs in this case have asserted negligence claims involving injuries that do *not* result from intentional sexual misconduct.

The statutory language, although ambiguous,[10] goes a long way toward answering the question presented in this case. As we just noted, the statute applies only to an "action to recover damages for personal injury to a minor, including emotional distress, *caused by sexual abuse, sexual exploitation or sexual assault* . . . ." (Emphasis added.) General Statutes § 52-577d. The sine qua non for application of the statute is the requirement of harm caused by an originating act of sexual abuse, exploitation or assault. The operative terms employed by the legislature to identify the required cause of the injuries—sexual abuse, sexual exploitation and sexual assault—are normally associated with intentional and deliberate wrongdoing; we do not commonly consider sexual abuse, exploitation or assault to be the result of mere accident or carelessness.[11] Indeed, a person engaging in such conduct almost invariably will seek to achieve his purposes using force, threats, trickery, coercion, deceit, or other wrongful means bespeaking

active malfeasance. Dictionary definitions[12] and legal treatises[13] uniformly define sexual abuse, exploitation and assault to mean intentional, usually criminal, conduct. Case law from Connecticut and elsewhere arising in a wide variety of civil law contexts likewise reflects a strong tendency to treat these acts as wilful and intentional. See, e.g., *Henderson* v. *Woolley*, 230 Conn. 472, 482, 644 A.2d 1303 (1994) (holding that parental immunity doctrine does not bar personal injury claims brought by child against her parent alleging sexual abuse, exploitation and assault because doctrine was not intended to extend to intentional misconduct); *United Services Automobile Assn.* v. *Marburg*, 46 Conn. App. 99, 102, 104, 111, 698 A.2d 914 (1997) (affirming judgment declaring that insurer had no duty to indemnify insured for damages arising from sexual abuse of minor because coverage was excluded for "expected or intended" injuries, and noting that "[m]any cases from other jurisdictions have held, under a doctrine of presumption of intent, that acts of sexual molestation of minors are so heinous that intent to cause harm is presumed as a matter of law" (internal quotation marks omitted)); *Paneson* v. *Zubillaga*, 753 So. 2d 127, 129 (Fla. App.) (addressing doctor's unlawful and unpermitted sexual touching of patient as intentional tort), review denied, 773 So. 2d 59 (Fla. 2000); *Heacock* v. *Cook*, 60 So. 3d 624, 628 (La. App. 2010) (sexual exploitation of patient is intentional tort); *Fearing* v. *Bucher*, 328 Or. 367, 373, 977 P.2d 1163 (1999) (treating sexual assault as intentional tort for purposes of application of doctrine of respondeat superior); *South Carolina Medical Malpractice Liability Ins. Joint Underwriting Assn.* v. *Ferry*, 291 S.C. 460, 464, 354 S.E.2d 378 (1987) (dentist's professional liability coverage did not apply to claim for sexual assault, which is intentional tort); *Graves* v. *North Eastern Services, Inc.*, 345 P.3d 619, 629 (Utah 2015) (treating sexual assault as intentional tort for purposes of determining whether apportionment rules apply); *Horace Mann Ins. Co.* v. *Leeber*, 180 W. Va. 375, 378–81, 376 S.E.2d 581 (1988) (treating claim of "sexual misconduct" as allegation of intentional tort and recognizing split of authority as to duty to defend and to provide coverage to insured for damages allegedly caused by sexual misconduct when policy excludes coverage for "intentional injury"); *J. K.* v. *Peters*, 337 Wis. 2d 504, 513, 808 N.W.2d 141 (App. 2011) (characterizing sexual assault and abuse of child as intentional torts).

A careful review of the legislative history confirms the view that the extended statute of limitations in § 52-577d was intended to require an originating act of intentional sexual abuse, exploitation or assault. Section 52-577d originally was enacted as part of No. 86-401 of the 1986 Public Acts (P.A. 86-401), An Act Concerning Victims Rights. As its title suggests, P.A. 86-401 focused on the rights of crime victims. See 29 S. Proc., Pt. 11,

1986 Sess., p. 3781, remarks of Senator Richard B. Johnston. In addition to extending the statute of limitations for actions seeking damages for injuries caused by sexual abuse, exploitation or assault of a minor;[14] see P.A. 86-401, § 6; the act implemented changes to the Office of Victim Services and gave victims the right to be notified of scheduled plea agreements and to present statements to the court prior to the court's acceptance of the pleas resulting from those agreements. See P.A. 86-401, § 2. The act also required the Criminal Injuries Compensation Board to provide victims with a list of their rights, as well as available assistance programs. See P.A. 86-401, § 1. No predicate criminal prosecution or conviction is required to qualify a claim for the extended limitation period provided by § 52-577d,[15] but the overriding purpose of the statute plainly was to enable crime victims additional time to bring civil actions for physical and emotional injuries arising from brutal, predatory sexual crimes perpetrated against them when they were children.

In examining whether § 52-577d was intended to reach injuries caused without any originating act of intentional sexual abuse, exploitation or assault, we consider it significant that the extension of the statute of limitations for civil actions was part of a legislative initiative designed to address the rights of crime victims. The particular references contained in the legislative history to horrific criminal acts indicate that the legislature's focus was on harm resulting from intentional sexual misconduct. Representative Richard D. Tulisano, one of the proponents of the bill, stated that the extended limitation period would apply in civil cases "in which a minor who has been victimized by sexual assault could bring an action against the offender . . . ." 29 H.R. Proc., Pt. 12, 1986 Sess., p. 4388. In response to those who opposed the extension of the statute of limitations, Representative Tulisano reminded those present: "We're talking about young individuals who are raped, who are sexually exploited, who are sexually assaulted." 29 H.R. Proc., Pt. 17, 1986 Sess., p. 6335. The remarks of other legislators reflected a similar understanding. Representative Naomi K. Cohen, who spoke in favor of the extension, recalled one of her constituents "who was raped in her home, as a [sixteen] year old, not by a relative but by someone else. Her parents and her sister were tied up in other rooms and had the opportunity to listen to the act. Without this amendment, the statute of limitations on her rights to file suit would have expired before she and her family, after a number of years of psychological counseling and psychiatric therapy were able to deal with this problem." Id., p. 6341. Representative John J. Woodcock III remarked that the bill would give "people who have been *brutally victimized* . . . a right and a remedy . . . ." (Emphasis added.) Id., p. 6340. We have not found any references to negligent sexual misconduct

in the legislative history.

The legislative history contains additional evidence that the legislation was aimed at intentional rather than negligent sexual misconduct. The issue of liability insurance coverage was raised several times, with some legislators expressing concern that the extended limitation period might cause the insurance rates of some businesses, including daycare providers, to rise. See, e.g., id., pp. 6330–31, 6337–38, remarks of Representative William L. Wollenberg. Representative Woodcock addressed those concerns: "I have never seen an insurance policy that covers behavior for sexual abuse, sexual exploitation or sexual assault. These are [wilful], [wanton] and reckless acts. This type of behavior is never defended by the insurance company. It does not fall within the coverage parameters of insurance." Id., p. 6339. Representative Michael D. Rybak also raised the prospect that passage of the bill might cause insurance companies to alter language in insurance policies to preclude coverage for sexual abuse, exploitation or assault. Id., p. 6356. Representative Tulisano responded that the very nature of the conduct at issue ruled out insurance coverage. "[T]his is [wilful] and [wanton]. *It's an intentional act that we're talking about here under this particular proposal.* So the individual would in fact be responsible personally." (Emphasis added.) Id., p. 6357. This aspect of the legislative history reinforces the view that the statute was intended to address causes of action for personal injuries arising from intentional sexual misconduct. The legislature was aware that insurers do not provide coverage for intentional torts, including sexual abuse, exploitation and assault, and discussed extensively the problems that victims would likely encounter in the event that the perpetrator lacked sufficient assets to support a recovery.[16]

The legislative history surrounding the passage of P.A. 86-401 demonstrates that the legislature intended to provide an extended limitation period so that victims could hold wrongdoers accountable and, when possible, recover money damages for personal injuries arising from intentional acts of sexual abuse, exploitation or assault. Although the legislature exhibited an intention to encompass, within the scope of the statute, negligence claims against third-party defendants whose carelessness amounted to a breach of a duty to protect a minor against harm arising from sexual misconduct, there is no indication anywhere in the legislative history that the extended limitation period was intended to apply in the absence of an act of intentional sexual abuse, exploitation or assault. This legislative history supports our conclusion that the extended limitation period set forth in § 52-577d does not apply to the plaintiffs' claims for injuries arising from medical negligence and negligent infliction of emotional distress, unaccompanied by an originating act of intentional misconduct. The negligence claims asserted by the plaintiffs are

governed by the limitation period set forth in § 52-584.

The judgments are affirmed.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

** December 15, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The plaintiffs appealed from the judgments of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] We note that the legislature has recently amended § 52-577d. See Public Acts 2019, P.A. 19-16, § 13 (replacing "minor" with "person under twenty-one years of age" and "age of majority" with "age of twenty-one"). Hereinafter, unless otherwise indicated, all references to § 52-577d are to the 2019 revision of the statute.

[3] The plaintiffs in these six consolidated cases are seven individuals who were pediatric patients of the original defendant, Robert Rackliffe; see footnote 4 of this opinion; when they were minor children.

[4] On November 29, 2016, following Rackliffe's death, the trial court granted the motion to substitute William J. Forbes, the executor of Rackliffe's estate, as the defendant. Prior to the substitution, the trial court had granted partial summary judgment, as to the negligence claims, in favor of Rackliffe in *John Doe #2* v. *Rackliffe*, Superior Court, judicial district of New Britain, Docket No. CV-14-5016102-S (December 14, 2015). After the substitution, the court rendered judgments in favor of Forbes in *John Doe #2*, as well as in the remaining five cases. For ease of reference, we refer in this opinion to Rackliffe and Forbes collectively as the defendant.

[5] The counts contained in each of the complaints are as follows. The two plaintiffs in *James Doe* v. *Rackliffe*, Superior Court, judicial district of New Britain, Docket No. CV-14-5017357-S (September 28, 2018), and the plaintiff in *John Doe #3* v. *Rackliffe*, Superior Court, judicial district of New Britain, Docket No. CV-15-5017333-S (September 28, 2018), each alleged intentional sexual assault and medical negligence. In *John Doe #2* v. *Rackliffe*, Superior Court, judicial district of New Britain, Docket No. CV-14-5016102-S (September 28, 2018), *Jane Doe* v. *Rackliffe*, Superior Court, judicial district of New Britain, Docket No. CV-15-5016759-S (September 28, 2018), *Jane Doe #2* v. *Rackliffe*, Superior Court, judicial district of New Britain, Docket No. CV-15-5017021-S (September 28, 2018), and *Jane Doe #3* v. *Rackliffe*, Superior Court, judicial district of New Britain, Docket No. CV-15-5017022-S (September 28, 2018), the plaintiffs each alleged intentional sexual assault, intentional infliction of emotional distress, medical negligence and negligent infliction of emotional distress.

[6] In *James Doe* v. *Rackliffe*, Superior Court, judicial district of New Britain, Docket No. CV-14-5017357-S (September 28, 2018), the defendant filed a motion for summary judgment as to the second and fourth counts, respectively alleging medical negligence with respect to each of the two plaintiffs. In *John Doe #2* v. *Rackliffe*, Superior Court, judicial district of New Britain, Docket No. CV-14-5016102-S (September 28, 2018), the defendant filed a motion for summary judgment as to the third and fourth counts, respectively alleging negligence and negligent infliction of emotional distress. In *John Doe #3* v. *Rackliffe*, Superior Court, judicial district of New Britain, Docket No. CV-15-5017333-S (September 28, 2018), the defendant incorrectly named counts three and four of the plaintiff's complaint in the motion for summary judgment, but the trial court treated the defendant's motion as seeking summary judgment as to count two, which alleged medical negligence. In *Jane Doe* v. *Rackliffe*, Superior Court, judicial district of New Britain, Docket No. CV-15-5016759-S (September 28, 2018), *Jane Doe #2* v. *Rackliffe*, Superior Court, judicial district of New Britain, Docket No. CV-15-5017021-S (September 28, 2018), and *Jane Doe #3* v. *Rackliffe*, Superior Court, judicial district of New Britain, Docket No. CV-15-5017022-S (September 28, 2018), the defendant sought summary judgment as to counts three and four, which in all three complaints respectively alleged medical negligence and negligent infliction of emotional distress.

[7] The court issued the three memoranda of decision over the course of two years. Although there are minor differences in the three decisions, the court's analysis in all three decisions is consistent. For ease of discussion, we set forth a composite summary of the reasoning in those decisions.

[8] *Fichera* v. *Mine Hill Corp.*, 207 Conn. 204, 212, 541 A.2d 472 (1988).

[9] Section 52-577d, the statute at issue in the present case, is an example

of such a specialized statute of limitations. Other examples include the statutes governing actions for defamation; see General Statutes § 52-597 ("[n]o action for libel or slander shall be brought but within two years from the date of the act complained of"); and for product liability. See General Statutes § 52-577a (establishing three year statute of limitations and ten year statute of repose for claims within scope of Connecticut Product Liability Act).

[10] See *Doe* v. *Boy Scouts of America Corp.*, supra, 323 Conn. 333 ("we conclude that the reference to § 52-577 in § 52-577d does not compel the interpretation urged by the defendant but, instead, merely creates ambiguity as to whether the legislature intended § 52-577d to apply to claims that would otherwise be subject to § 52-584").

[11] We note that the sole issue presented is one of statutory construction, i.e., whether the legislature intended § 52-577d to encompass negligence claims for personal injuries that do not result from intentional sexual misconduct. We do not address whether Connecticut recognizes the tort of negligent sexual abuse, exploitation or assault, but only whether the plaintiffs' medical negligence claims are subject to the extended statute of limitations provided in § 52-577d.

[12] For definitions of "sexual assault" and "assault," see, for example, Black's Law Dictionary (11th Ed. 2019) pp. 141–42 (defining "assault" as "[t]he threat or use of force on another that causes that person to have a reasonable apprehension of imminent harmful or offensive contact" and "sexual assault" as including "[o]ffensive sexual contact" and "[s]exual intercourse with another person who does not consent"), Merriam-Webster Online Dictionary, available at http://www.merriam-webster.com/dictionary/sexual%20assault (last visited December 11, 2020) (defining "sexual assault" as "illegal sexual contact that usually involves force upon a person without consent or is inflicted upon a person who is incapable of giving consent"), 1 Oxford English Dictionary (2d Ed. 1998) p. 701 (defining "assault" as "[a]n onset or rush upon any one with hostile intent"), Random House Dictionary of the English Language (2d Ed. 1987) p. 124 (defining "assault" as "a sudden, violent attack; onslaught . . . rape"), Webster's Third New International Dictionary (2002) p. 130 (including "rape" as one synonym of "assault"), and American Heritage College Dictionary (4th Ed. 2007) p. 85 (same).

For definitions of "sexual abuse," see, for example, Black's Law Dictionary (11th Ed. 2019) p. 1652 (defining "sexual abuse" as "rape"), and Merriam-Webster Online Dictionary, available at http://www.merriam-webster.com/legal/sexual%20abuse (last visited December 11, 2020) (defining "sexual abuse" as "the infliction of sexual contact upon a person by forcible compulsion").

Black's Law Dictionary defines "sexual exploitation" as "[t]he use of a person, [especially] a child, in prostitution, pornography, or other sexually manipulative activity." Black's Law Dictionary (11th Ed. 2019) p. 1652.

[13] For definitions of assault, see, for example, 6 Am. Jur. 2d 8–9, Assault and Battery § 1 (2008) ("An assault is a demonstration of an unlawful intent by one person to inflict immediate injury or offensive contact on the person of another then present. It is frequently defined as an intentional attempt by a person, by force or violence, to do an injury to the person of another, or as any attempt to commit a battery, or any threatening gesture, showing in itself or by words accompanying it, an immediate intention coupled with a present ability to commit a battery." (Footnote omitted.)), 6 Am. Jur. 2d, supra, § 15, p. 19 ("[e]ven when a statutory definition of assault or assault and battery does not contain the word 'intent' or 'intentional,' the requirement of intent to inflict an injury has frequently been established as an essential element of the crime by judicial construction"), and 1 F. Harper et al., Harper, James and Gray on Torts (3d Ed. 2006) § 3.4, p. 320 (defining "assault" as "an act intended to cause a battery upon another person, or to put another person in apprehension of an immediate battery (a bodily contact, either harmful or offensive), and that succeeds in causing an apprehension of such battery in the other or a third person" (footnote omitted)).

For a definition of "sexual abuse," see, e.g., 6 Am. Jur. 2d, supra, § 8, p. 14 ("[a]n act of sexual abuse is a battery").

[14] As subsequently amended in a technical amendment by No. 86-403, § 104, of the 1986 Public Acts, § 6 of P.A. 86-401 provided: "Notwithstanding the provisions of section 52-577 of the general statutes, no action to recover damages for personal injury to a minor, including emotional distress, caused by sexual abuse, sexual exploitation or sexual assault may be brought by such person no later than two years from the date such person attains the age of majority, except that no such action may be brought more than seven

years from the date of the act complained of."

[15] The legislature was aware that not all sexual misconduct resulted in criminal convictions, and the relevant statutory scheme was amended in 2002 to abolish altogether the statute of limitations for personal injury actions brought by the victim of first degree or aggravated first degree sexual assault. See Public Acts 2002, No. 02-138, § 3 (P.A. 02-138), codified at General Statutes § 52-577e ("[n]otwithstanding the provisions of sections 52-577 and 52-577d, an action to recover damages for personal injury caused by sexual assault may be brought at any time after the date of the act complained of if the party legally at fault for such injury has been convicted of a violation of section 53a-70 or 53a-70a"). This statutory refinement does not, however, support the plaintiffs' argument in the present case. The distinction between §§ 52-577d and 52-577e is that the latter addresses sexual misconduct that results in a criminal conviction, whereas the former concerns all other sexual misconduct. There is no reason to believe that the passage of P.A. 02-138 signaled an intention to include within the scope of § 52-577e the injurious consequences of noncriminal sexual misconduct.

[16] Lawmakers were aware that, in some instances, victims relying on the extended limitation period may obtain little or even no monetary relief. See 29 H.R. Proc., Pt. 17, 1986 Sess., pp. 6336–37, 6345–46. Proponents of the legislation emphasized, however, that the benefit afforded to victims goes beyond the ability to recover money damages. An important purpose of the extension of the limitation period is to afford victims the satisfaction of holding the intentional wrongdoer legally responsible, thus enabling victims to move forward with their lives. See id. Accordingly, we disagree with the plaintiffs that our construction of § 52-577d runs contrary to the public policy underlying our tort system of shifting loss from victims to wrongdoers. Compensating victims financially undoubtedly counts among the primary purposes of our tort law. See, e.g., *Doe* v. *Cochran*, 332 Conn. 325, 363, 210 A.3d 469 (2019). And, as the legislators made clear in the floor debate of P.A. 86-401, the overarching purpose of the statute is to make victims whole, a process that will include monetary recovery, if possible. But this logic does not require us to conclude here that the legislature intended the statute to apply to injuries caused by purely negligent sexual misconduct. To the contrary, the legislature recognized that financial compensation may not occur in every case involving the sexual abuse, exploitation or assault of a minor.