IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOHN BM DOE, *Plaintiff/Appellant*,

*v.*

THE ROMAN CATHOLIC CHURCH OF THE DIOCESE
OF PHOENIX, et al., *Defendants/Appellees*.

No. 1 CA-CV 22-0143
FILED 6-29-2023

Appeal from the Superior Court in Maricopa County
No. CV2016-015552
The Honorable Michael W. Kemp, Judge
The Honorable Katherine Cooper, Judge

**DISMISSED IN PART; AFFIRMED IN PART**

COUNSEL

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Co-Counsel for Plaintiff/Appellant*

Montoya, Lucero & Pastor, P.A., Phoenix
By Robert E. Pastor
*Co-Counsel for Plaintiff/Appellant*

Coppersmith Brockelman PLC, Phoenix
By John C. Kelly
*Co-Counsel for Defendants/Appellees The Roman Catholic Church of the Diocese of Phoenix and St. Mark Roman Catholic Church Parish Phoenix*

Lewis Roca Rothgerber Christie LLP, Phoenix
By Nicolas Scott Bauman, John C. Gray
*Co-Counsel for Defendants/Appellees The Roman Catholic Church of the Diocese of Phoenix and St. Mark Roman Catholic Church Parish Phoenix*

Thorpe Shwer, P.C., Phoenix
By William L. Thorpe, Mitchell W. Fleischmann
*Co-Counsel for Defendant/Appellee The Society of the Divine Savior USA Province*

Laffey, Leitner and Goode, LLC, Milwaukee, Wisconsin
By John J. Laffey *Pro Hac Vice*
*Co-Counsel for Defendant/Appellee The Society of the Divine Savior USA Province*

Jones Skelton & Hochuli, PLC, Phoenix
By Elizabeth B.N. Garcia, Patrick C. Gorman, Ashley E. Caballero-Daltrey, Donald L. Myles, Jr.
*Counsel for Amicus Curiae USA West Province, Society of Jesus and Brophy College Preparatory*

---

**OPINION**

---

Presiding Judge Maria Elena Cruz delivered the opinion of the Court, in which Judge Angela K. Paton and Judge Daniel J. Kiley[1] joined.

---

**C R U Z**, Judge:

¶1        John BM Doe appeals from the grant of summary judgment in favor of The Society of the Divine Savior USA Province ("the

---

[1]        Judge Daniel J. Kiley replaced Judge Peter B. Swann, who was originally assigned to this panel but has since retired. Judge Kiley has read the briefs, watched the recorded oral argument, and reviewed the record.

Salvatorians"), The Roman Catholic Church of the Diocese of Phoenix ("the Diocese"), and the St. Mark Roman Catholic Church Parish Phoenix ("St. Mark" and, together with the Diocese, "the Diocese Defendants"). We dismiss in part and affirm in part.

## FACTUAL AND PROCEDURAL HISTORY

¶2          Viewed in the requisite light most favorable to Doe as the party against whom summary judgment was granted, *S. Point Energy Ctr. LLC v. Ariz. Dep't of Revenue*, 253 Ariz. 30, 33, ¶ 10 (2022), the facts in the record establish that, after a motorcycle accident in 2014, Doe awoke from a coma and saw a priest in his hospital room. Doe claims that seeing the priest caused him to remember sexual abuse he suffered in 1983 at the hands of Dennis Pecore, a Roman Catholic priest. Before the coma, Doe claims he had involuntarily and subconsciously repressed his memories of the sexual abuse to cope with the trauma.

¶3          The Salvatorians are a Roman Catholic religious order operating separately from dioceses. Religious orders ordain their own priests, who vow obedience to the "major superior" of their order. In contrast, diocesan priests promise obedience to a diocese's bishop. Religious orders may assume responsibility over specific parishes within a diocese, which includes providing priests to serve there. Throughout the 1980s, the Salvatorians assumed responsibility over St. Mark, a parish within the Diocese.

¶4          Pecore was ordained a Salvatorian priest in 1982, and his first assignment was to serve as an associate pastor at St. Mark. Thomas O'Brien, the then-bishop of the Diocese, accepted Pecore's assignment to St. Mark and granted Pecore authority to minister there based on the recommendation of the Salvatorians.

¶5          Doe alleges that Pecore molested him in 1983 when Doe was a sixth grader at the elementary school operated by St. Mark. Doe had been instructed to meet with Pecore throughout the school year for spiritual counseling. Soon after these meetings started, Pecore began engaging with Doe through other activities, such as playing basketball, helping him with schoolwork, and taking him to restaurants.

¶6          In the spring of 1983, Pecore took Doe on a camping trip. There, they slept together in the bed of Pecore's pickup truck. At night, Doe alleges, Pecore woke him up, fondled him, and penetrated him. Before dropping him off at home the next day, Pecore instructed Doe not to tell anyone what had happened. Doe recalled two or three subsequent

incidents of sexual abuse that occurred in Pecore's living quarters at the church rectory, with one of those incidents also resulting in penetration. After those spring 1983 incidents at Pecore's living quarters, Doe told his mother he did not want to see Pecore for counseling anymore, and the meetings ended. Doe claims he repressed these memories until his motorcycle accident in 2014 and did not report the abuse to anyone until January 2016.

¶7         In May 1983, St. Mark closed its elementary school, and Pecore was assigned to a parish in Milwaukee, Wisconsin. In 1987, while in Milwaukee, Pecore was convicted of sexually assaulting a minor. In 1993, he was convicted of sexually assaulting another minor. And in 2002, a parishioner reported to the Archdiocese of Baltimore that Pecore had abused her son in the 1970s when Pecore had served there as a Salvatorian brother before he was ordained a priest.

¶8         After Doe reported the abuse in January 2016, the Salvatorians investigated and determined the report was credible. The Diocese published a community notification advising parishioners of the accusations.

¶9         Doe filed this lawsuit in 2016 against Pecore, the Salvatorians, and the Diocese Defendants. He asserted a claim against Pecore for sexual assault/sexual abuse/molestation; a claim against the Salvatorians and the Diocese Defendants for negligent hiring/supervision/retention; and claims against all defendants for breach of fiduciary duty, intentional infliction of emotional distress ("IIED"), intentional and negligent misrepresentation, endangerment, child abuse, and assault and battery. The child abuse, misrepresentation, and assault and battery claims rested, in whole or in part, on a theory of vicarious liability.

¶10         After several years of discovery, the Salvatorians and the Diocese Defendants filed motions for summary judgment. The superior court granted these motions and dismissed all claims against the Salvatorians and the Diocese Defendants, allowing only the claims against Pecore to proceed.

¶11         The court entered Arizona Rule of Civil Procedure ("Rule") 54(b) partial final judgments in favor of the Salvatorians on August 26, 2021, and in favor of the Diocese Defendants on August 30, 2021. Doe filed a motion for new trial as to both judgments on September 14, 2021, which the court denied. Doe appealed in January 2022, and we have jurisdiction

4

pursuant to Arizona Constitution Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

I.     Doe's Appeal from the Rule 54(b) Judgment in Favor of the Salvatorians Was Untimely.

**¶12**         To appeal a judgment in a civil case, a party must generally file a notice of appeal "no later than 30 days after entry of the judgment from which the appeal is taken." ARCAP 9(a). Certain motions, including motions for a new trial, may toll this thirty-day window if timely and properly filed. *Id.* at (e)(1)(D). Motions for a new trial "must be filed no later than 15 days after the entry of judgment." Ariz. R. Civ. P. 59(b)(1).

**¶13**         Here, the superior court entered its partial final appealable judgment granting the Salvatorians' motion for summary judgment on August 26, 2021. Doe did not file a motion for a new trial until September 14, 2021, nineteen days after the entry of the Rule 54(b) judgment. Because the motion for a new trial was not filed within fifteen days of entry of the Rule 54(b) judgment in favor of the Salvatorians, it was not timely and did not toll the thirty-day deadline for filing a notice of appeal. *See* ARCAP 9(e)(1)(D). Doe's notice of appeal from the Rule 54(b) judgment in favor of the Salvatorians was therefore due no later than September 25, 2021. Doe did not file it until January 28, 2022. The notice of appeal was therefore untimely, and we lack jurisdiction over the appeal against the Salvatorians. *See In re Real Prop. Known as 3567 E. Alvord Road*, 249 Ariz. 568, 571, ¶ 5 (App. 2020) ("If an appeal is not timely filed 'the appellate court acquires no jurisdiction other than to dismiss the attempted appeal.'" (quoting *Edwards v. Young*, 107 Ariz. 283, 284 (1971))).

**¶14**         Correctly noting that the motion for a new trial he filed on September 14, 2021, tolled the deadline for filing a notice of appeal from the Rule 54(b) judgment entered in favor of the Diocese Defendants on August 30, 2021, Doe argues that the motion for a new trial necessarily tolled the deadline for appealing from the Rule 54(b) judgment in favor of the Salvatorians as well. Doe relies on *Payne v. M. Greenberg Construction*, 130 Ariz. 338 (App. 1981), in which this court held that a motion for a new trial properly filed against one defendant tolled the thirty-day deadline for filing a notice of appeal as to both defendants. *Id.* at 342, *overruled in part by Webster v. Culbertson*, 158 Ariz. 159 (1988). The separate judgments in *Payne*, however, were not entered under Rule 54(b) and thus did not become final and appealable until judgment had been entered against both defendants.

*Id.* at 341. Because there was only one final, appealable judgment, the motion for a new trial extended the time to appeal against all defendants. *Id.* at 342. Here, the judgments against the Diocese Defendants and the Salvatorians were separately entered on different days, each pursuant to Rule 54(b). Therefore, each judgment is a partial final judgment pertaining to different defendants, and each judgment has its own deadlines for filing appeals and motions for new trial.

¶15          Doe next argues that A.R.S. § 12-2101(A)(5)(a), which allows an appeal to be taken from an order granting or refusing a new trial, "controls the statutory right to file a notice of appeal from a trial court order refusing a new trial," and so "takes priority over" deadlines established by court rules. While it is true that a statute creating a substantive right prevails over a procedural rule in the event of a conflict, *see City of Phoenix v. Johnson*, 220 Ariz. 189, 192, ¶ 14 (App. 2009), this principle does not apply here. Section 12-2101 and ARCAP 9 do not conflict; the former provides the basis for bringing an appeal, while the latter establishes deadlines for doing so. *See Pompa v. Superior Court*, 187 Ariz. 531, 534 (App. 1997) ("Although the right to appeal is a substantive right granted by the legislature, rules of procedure govern the way in which that right may be exercised.").

¶16          Doe argues that his notice of appeal from the Rule 54(b) judgment in favor of the Salvatorians was timely under court rules because ARCAP 9(a) states that a party must file a notice of appeal no later than thirty days after the entry of judgment "unless the law provides a different time." According to Doe, A.R.S. § 12-2101(A)(5)(a) "provides a different time" within the meaning of ARCAP 9(a) by allowing an appeal to be taken from an order refusing a new trial. Section 12-2101(A)(5)(a) does not, however, establish any deadline for filing a notice of appeal, much less a deadline "different" from the deadline created by ARCAP 9(a). Nothing in § 12-2101(A)(5)(a) relieves Doe of the consequences of his failure to meet ARCAP 9(a)'s deadline for filing a notice of appeal from the Rule 54(b) judgment in favor of the Salvatorians.

¶17          Doe failed to timely appeal. Accordingly, the appeal from the Rule 54(b) judgment in favor of the Salvatorians is dismissed for lack of appellate jurisdiction.

II.    The Superior Court Properly Granted Summary Judgment in Favor of the Diocese Defendants.

¶18          Doe argues the superior court erred in granting the Diocese Defendants' motion for summary judgment. "The court shall grant

summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). Summary judgment is not appropriate when the court simply believes the movant will probably win, or should win, at trial. *Orme Sch. v. Reeves*, 166 Ariz. 301, 310 (1990). We review a grant of summary judgment de novo, viewing the facts "in the light most favorable to the party against whom summary judgment has been entered." *United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 140, ¶ 26 (App. 2006); *accord S. Point Energy Ctr. LLC*, 253 Ariz. at 33, ¶ 10.

### A. Direct Liability

**¶19** Doe asserted direct liability claims against the Diocese Defendants for breach of fiduciary duty; IIED; misrepresentation; negligent hiring, supervision, and retention; and endangerment. In its ruling granting the Diocese Defendants' motion for summary judgment on these claims, the superior court recognized the claims required proof that the Diocese Defendants "knew or should have known that Pecore was unfit to teach or counsel young children or that he was a danger to children prior to his abuse of [Doe]." The superior court determined that there was no evidence the Diocese Defendants "[knew or] should have known of the danger" Pecore posed to children in or before the spring of 1983, the time Doe alleges Pecore abused him.

**¶20** Doe does not dispute that the Diocese Defendants cannot be liable on his direct liability claims absent notice of Pecore's sexual propensities. But he nonetheless insists there was enough evidence from which a reasonable jury could conclude the Diocese Defendants had notice of the danger Pecore posed to children in or before the spring of 1983. Doe also asserts that Pecore left his seminary studies because he was involved in a homosexual relationship with another seminarian in violation of Roman Catholic doctrine and that he was ordained by the Salvatorians without the standard recommendation from the seminary. Doe claims that, based on these facts, reasonable jurors could infer that if the Diocese Defendants had acted with due diligence, they "would have discovered that Pecore was utterly unsuitable to be a priest in charge of schoolchildren" and "should have never been ordained at all."

**¶21** Even assuming the facts as alleged are true, they would not support Doe's claims. First, Pecore's involvement in a sexual relationship with another consenting adult, whether male or female, does not bear on any risk he may have posed to children. *Cf. State v. Aguilar*, 209 Ariz. 40, 43, ¶ 11, (2004) (sexual activity with children is considered aberrant sexual

behavior).  Second, the ecclesiastical abstention doctrine prevents us from addressing whether Pecore was duly ordained without the seminary's recommendation.  *See Ad Hoc Comm. of Parishioners of Our Lady of Sun Cath. Church, Inc. v. Reiss*, 223 Ariz. 505, 510, ¶¶ 11-12 (App. 2010) (holding that the court could not inquire into whether a priest was qualified to be duly ordained under the ecclesiastical abstention doctrine).

¶22 Doe also points to an incident in which Pecore allegedly inappropriately touched K.M., an adult male teacher working as a music minister at St. Mark.  After graduating from high school in 1981, K.M. worked at St. Mark's Elementary School during the 1982-1983 school year.  K.M. claimed that, while on a trip to a youth camp during that school year, he and Pecore slept in the back of Pecore's pickup truck and Pecore "made attempts to be sexual" by "grabbing" and touching him inappropriately.  K.M. stated he "rejected [Pecore's] advances with a stern, no."  In January 1983, K.M. reported the incident to three priests at St. Mark: Father Wagner, a Salvatorian priest working as the hospital chaplain at St. Mark; Father Thiessen, the Salvatorians' Director of Personnel; and Father Portland, the Salvatorian vicar provincial.

¶23 Doe asserts that K.M.'s report to Father Wagner, St. Mark's hospital chaplain, constituted notice to the Diocese Defendants because St. Mark is part of the Diocese.[2]  And based on that report, Doe argues, a reasonable juror could conclude that "a priest who is willing to violate his vow of celibacy and sexually assault a young [adult] man . . . would be willing to do even more, and sexually assault one of the available, compliant, and vulnerable underage boys in his care."

¶24 The Diocese Defendants assert that they never received information about K.M.'s report.  The superior court acknowledged that K.M. reported Pecore's alleged abuse to three Salvatorian priests but concluded that "there is no evidence any information was passed on to the Diocese Defendants."

¶25 The superior court's conclusion is supported by the record.  There is no evidence that Father Wagner shared K.M.'s report with the Diocese Defendants.  Father Thiessen testified at his deposition that he did not share K.M.'s report with the Diocese Defendants, and the Diocese's vicar of priests discovered no such report in the Diocese's files.  Doe

---

[2] In his deposition, Thomas J. Olmstead, the bishop of the Diocese when this case was filed, stated that parishes are part of the ministry of the Diocese.

presented no evidence to the contrary. The uncontroverted evidence in the record would not allow reasonable jurors to conclude that K.M.'s January 1983 report constituted actual notice to the Diocese Defendants of Pecore's assault on K.M.

¶26 Doe suggests that notice of K.M.'s report to the three Salvatorian priests should be imputed to the Diocese Defendants because they and the Salvatorians were joint venturers in their employment of Pecore. Notice to one party to a joint venture, he reasons, serves as notice to all. *See Conner v. El Paso Nat. Gas Co.*, 123 Ariz. 291, 293 (App. 1979) ("Where a joint venture exists, each of the parties is the agent of the others and each is likewise a principal of the others so that the act of one is the act of all.").

¶27 The Diocese Defendants contend Doe raised this argument for the first time on appeal and therefore waived it. Doe responds that he took the position that the Salvatorians and the Diocese Defendants were joint venturers in his first amended complaint and in his response to the Diocese Defendants' motion for summary judgment.

¶28 While it is true that Doe alleged, in his first amended complaint, that all defendants were "joint venturers" of "each and every other Defendant," an unsworn allegation in a pleading is insufficient as a matter of law to defeat summary judgment. *See Kelly v. NationsBanc Mortg. Corp.*, 199 Ariz. 284, 287, ¶ 15 (App. 2000) ("[A] party opposing a motion for summary judgment may not rest on the pleadings; it must respond with specific facts showing a genuine issue for trial."). More significantly, the record does not support Doe's claim that he raised the "joint venturer" theory of liability in summary judgment proceedings before the superior court. On the contrary, in his response to the Diocese Defendants' motion for summary judgment, Doe acknowledged that the Diocese Defendants were not privy to the troubling information about Pecore known to the Salvatorians but faulted the Diocese Defendants for failing to "ask the Salvatorians to provide information regarding Fr. Pecore's history" before allowing him to serve as a priest at St. Mark. Doe did not raise his "joint venturer" theory of liability in post-judgment filings either. Because Doe did not properly raise the "joint venturer" theory of liability in superior court, he has waived the theory on appeal, and we decline to consider it. *See Lansford v. Harris*, 174 Ariz. 413, 419 (App. 1992) ("On appeal from summary judgment, the appellant may not advance new theories or raise new issues to secure a reversal."); *see also Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, 386, ¶ 12 (App. 2011) ("The general law in Arizona is that legal theories must be presented timely to the

trial court so that the court may have an opportunity to address all issues on their merits.").

¶29        Even assuming the Diocese Defendants had timely notice of K.M.'s January 1983 report, it would not support an argument that a reasonable juror could infer from K.M.'s report that the Diocese Defendants knew or should have known Pecore posed a danger *to children*. K.M. stated that Pecore "developed a relationship with [him] that crossed boundaries" because Pecore showed him "special attention," "excessively compliment[ed] [his] music ministry," gave him "expensive" gifts, and told K.M. "he was developing feelings for" him. After these advances, K.M. accepted Pecore's offer to drive him to the youth camp, and while sleeping together in the back of Pecore's truck, he rejected Pecore's "attempts to be sexual." The record shows that the interaction between Pecore and K.M. involved an adult male's romantic pursuit of another adult male that culminated in an arguably non-consensual sexual touching that ceased when rebuffed. It is not a scenario of an adult sexually preying on a child such that the Diocese Defendants would have been on notice that Pecore was sexually interested in, or posed a danger to, children. We are persuaded by the Diocese's argument and the superior court's conclusion that there is "no credible connection between" K.M.'s report and "Pecore posing a danger to children" because "[a]n adult homosexual is no more likely to be a sexual predator of children than an adult heterosexual."

¶30        Finally, Doe asserts that "[the] general pattern of sexual abuse" of other victims by other priests put the Diocese Defendants on notice of "an unreasonable risk" of harm Pecore posed to Doe. As a matter of law, however, acts of sexual abuse *by other priests* cannot constitute notice of a threat of harm posed *by Pecore*. *See Doe v. Byzantine Cath. Diocese of Parma*, CV-21-01424-PHX-JJT, 2022 WL 1664282 at *3 (D. Ariz. May 25, 2022) (order denying motion to remand, granting in part and denying in part motions to dismiss and dismissing claims as time barred, and denying as moot request for judicial notice) ("Under no legal theory is [a religious entity] liable for the acts of one employee based on the prior, unrelated misconduct of another employee.").

¶31        The superior court properly granted summary judgment in favor of the Diocese Defendants on Doe's direct liability claims because no evidence in the record indicates that they had notice that Pecore posed a threat of harm to children.

B.      Vicarious Liability

**¶32**        Doe alleges that the Diocese Defendants are liable for child abuse, misrepresentation, and assault and battery under the doctrine of respondeat superior, which holds an employer vicariously liable for the tortious behavior "of an employee who was acting within the course and scope of his employment." *See Pruitt v. Pavelin*, 141 Ariz. 195, 205 (App. 1984).  The superior court concluded the Diocese Defendants could not be held vicariously liable because "Pecore's conduct was clearly outside the scope of employment."  We agree.

**¶33**        "An employer is vicariously liable for the negligent or tortious acts of its employee acting within the scope and course of employment." *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Tr. of Phoenix, Inc.*, 197 Ariz. 535, 540, ¶ 17 (App. 2000).  An employee's conduct is "within the scope [of employment] if it is the kind the employee is employed to perform, it occurs within the authorized time and space limits, and furthers the employer's business even if the employer has expressly forbidden it." *Id.*

**¶34**        In determining whether an employee's tortious act is in furtherance of employment, the relevant question is not whether the employer could have expected or foreseen it.  On the contrary, an employee's tortious act may be in furtherance of his or her employment "even if the employer has expressly forbidden it." *Id.*  Whether an employee's tortious act is in furtherance of employment depends instead on whether the employee "was performing a service in furtherance of his employer's business," irrespective of "whether it was done in a manner exactly as the employer prescribed." *Higgins v. Assmann Elecs., Inc.*, 217 Ariz. 289, 297, ¶ 32 (App. 2007) (quoting *Ortiz v. Clinton*, 187 Ariz. 294, 299 (App. 1996)).  The owner of a retail establishment, for example, may be vicariously liable for an assault committed by a security guard against a customer suspected of shoplifting. *See Simon v. Safeway, Inc.*, 217 Ariz. 330, 340, ¶ 25 n.12 (App. 2007) (noting that supermarket would be vicariously liable for security guard's assault on plaintiff customer if plaintiff "should ultimately prove an employer-employee relationship").  An employer will not be vicariously liable, however, for an employee's tortious act undertaken solely for the employee's own purposes.  Restatement (Third) of Agency § 7.07 (2006) ("An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.").

¶35        Generally, whether an employee's conduct is within the course and scope of employment is a question of fact for the jury. *Smith v. Am. Express Travel Related Servs. Co.*, 179 Ariz. 131, 136 (App. 1994). "It is a question of law, however, if the undisputed facts indicate that the conduct was clearly outside the scope of employment." *Id.*

¶36        In *Smith*, we held that an employer was not vicariously liable for acts of sexual harassment, including unwanted physical contact and forced sexual intercourse, committed by a supervisor against another employee. *Id.* We reasoned that the supervisor's "conduct was outside the scope of his employment" because his acts "were not expressly or impliedly authorized as part of his job duties" or "incidental to his employment" and were "committed solely to further his own personal interests." *Id.* The same reasoning applies here. No evidence in the record would support a finding that the acts Doe accuses Pecore of were expressly or impliedly authorized as part of his job duties or incidental to his employment as a priest, teacher, or counselor. The acts were committed not for any purpose of his employer, but solely to gratify Pecore's personal, apparently sexual desires. Under *Smith*, Pecore's alleged conduct was not undertaken in the course and scope of his employment, and therefore the Diocese Defendants cannot, as a matter of law, be vicariously liable for them.

¶37        Our holding that the Diocese Defendants cannot be held vicariously liable for Pecore's sexual abuse of a child is consistent with that of the majority of courts in other jurisdictions that have addressed this issue. *See, e.g.*, *Tichenor v. Roman Cath. Church of Archdiocese of New Orleans*, 32 F.3d 953, 960 (5th Cir. 1994) (applying Mississippi law and affirming summary judgment in favor of church on claims arising out of priest's acts of sexual abuse against minor; priest's sexual acts "represent the paradigmatic pursuit of 'some purpose unrelated to his master's business.'" (quoting *Seedkem S., Inc. v. Lee*, 391 So. 2d 990, 995 (Miss. 1980))); *Bernie v. Cath. Diocese of Sioux Falls*, 821 N.W.2d 232, 239, ¶ 13 (S.D. 2012) (affirming summary judgment in favor of diocese on claims arising out of alleged acts of sexual abuse committed against students by priests and teachers; "[I]n most cases, courts conclude that sexual abuse by priests represents such a far deviation from furthering a church or diocese's business, and is such a clear-cut digression from an employee's duty, that it is, as a matter of law, outside the scope of employment."); *N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 599, ¶ 17 (Okla. 1999) (affirming summary judgment in favor of religious organization on claims arising out of alleged acts of sexual abuse committed by minister against minors; "Ministers should not molest children. When they do, it is not a part of the minister's duty nor customary within the business of the congregation."); *Iglesia Cristiana La Casa Del Senor,*

*Inc. v. L.M.*, 783 So. 2d 353, 358 (Fla. Dist. Ct. App. 2001) (reversing jury verdict against church on claims arising out of minister's sexual assault of 16-year-old parishioner; "[A]s a matter of law," church "cannot be held vicariously liable" because minister "was not engaging in authorized acts or serving the interests of the [c]hurch . . . on the day he raped her."); *cf. Doe v. Dickenson*, No. CV-07-1998-PHX-GMS, 2008 WL 4933964 at *7 (D. Ariz. Nov. 14, 2008) (order granting in part and denying in part motions to dismiss and for summary judgment) ("[C]ases from other jurisdictions . . . are virtually unanimous in holding that a school employee does not act within the scope of employment by molesting a child.").

**¶38**        Contrary to this "virtually unanimous" majority rule, some courts have determined that priests or ministers may be acting within the scope of their employment when using their employer-granted authority to engage in tortious misconduct. *E.g.*, *Schmidt v. Archdiocese of Portland in Or.*, 234 P.3d 990, 993 (Or. Ct. App. 2010) (determining there was evidence from which a jury could find that a priest's sexual abuse of a student was within the scope of his employment, in part due to the priest's authority over the student); *Mullen v. Horton*, 700 A.2d 1377, 1381 (Conn. App. Ct. 1997) ("[A] trier of fact could reasonably find that the sexual relations between [the priest] and the plaintiff directly grew out of, and were the immediate and proximate results of, the church sanctioned counseling sessions."), *overruled in part by Cefaratti v. Aranow*, 141 A.3d 752 (Conn. 2016).

**¶39**        Doe also relies heavily on *State v. Schallock*, 189 Ariz. 250 (1997), wherein the Arizona Supreme Court rejected a per se rule "that an employer is never vicariously liable for an intentional tort" committed by an employee. *Id.* at 256. In *Schallock*, the court held that a manager's sexual harassment of employees under his supervision could be considered within the manager's course and scope of employment because the harassment was "incidental to" the manager's authority to "hire and fire, promote and demote, [and] instruct and control" his subordinates. *Id.* at 257, 259, 262. Noting that the manager's "egregious improprieties" occurred in the workplace and continued "for close to a decade," the court further held "[a] jury might well choose not to believe" that the "acts were unauthorized . . . when the employer permitted them to occur and recur over [such] a long period at its place of business and during business hours." *Id.* at 257-58.

**¶40**        Here, the record does not support embracing the minority rule or that *Schallock* precludes summary judgment. *Schallock* is narrowly applicable to cases involving longstanding abuse and harassment in the workplace by a manager with authority to "hire and fire, promote and demote, [and] instruct and control" subordinates the manager victimizes.

*Id.* at 257. In such a case, a reasonable jury could find that the employer knew or should have known of the manager's longstanding misconduct, and by doing nothing, condoned and implicitly authorized it. *See id.* at 257-58. No such facts are present here. The Diocese Defendants lacked notice that Pecore posed a sexual danger to children, and therefore a reasonable jury could not find they implicitly authorized Pecore's abuse of Doe. *See supra* ¶¶ 28-29. We also decline Doe's invitation to adopt the minority rule that priests or ministers may be acting within the scope of their employment when using their employer-granted authority to engage in tortious misconduct.

C.       House Bill 2466

**¶41**            Noting that the Legislature passed, and the Governor signed, House Bill 2466 in 2019, Doe argues that the purpose of this enactment was "to ensure that all adult victims of sexual abuse – both men and women – would have a reasonable opportunity" to "seek redress" for the abuse to which they were subjected. The effect of this bill, Doe insists, "was to extend" the "vicarious-liability causes of action" of the kind he asserted here.

**¶42**            House Bill 2466 extended the statute of limitations for civil claims for sexual abuse of a child, allowing victims to bring claims up to the age of thirty. 2019 Ariz. Law, ch. 259, § 1 (H.B. 2466) (codified at A.R.S. § 12-514). Section 3 of the bill also created a "lookback window" temporarily allowing victims *over* the age of thirty to bring claims against certain defendants between May 27, 2019, and December 31, 2020. *Id.* at § 3(A)-(B).[3] Contrary to Doe's suggestion, House Bill 2466 did not create or expand any substantive causes of action, but merely extended the limitations period for certain claims. Because the superior court's grant of summary judgment was not based on limitations grounds, House Bill 2466 is inapplicable.

**¶43**            Applying the majority rule, and considering the factors utilized in Arizona cases, reasonable jurors could not find Pecore's conduct was within the course and scope of his employment with the Diocese Defendants. While there may be instances where the facts could support a finding that a clergy member committed sexual abuse or misconduct within

---

3          Under § 3(C), claims could be brought against someone who did not perpetrate the abuse if the non-perpetrator "knew or otherwise had actual notice of any misconduct that creates an unreasonable risk of sexual conduct or sexual contact with a minor by an employee, a volunteer, a representative or an agent."

the course and scope of his or her employment, no such evidence exists here. The superior court therefore properly granted the Diocese Defendants' motion for summary judgment with respect to Doe's vicarious liability claims.

## CONCLUSION

**¶44** We dismiss in part for lack of appellate jurisdiciton and affirm in part. Because the notice of appeal against the Salvatorians was untimely, we lack appellate jurisdiction and therefore dismiss the appeal against them. The Salvatorians request their attorneys' fees under ARCAP 25 as a sanction for Doe's "disregard of the untimeliness" of his appeal against them. Such an award is discretionary, *Ariz. Dep't of Revenue v. Gen. Motors Acceptance Corp.*, 188 Ariz. 441, 446 (App. 1996), and will only be imposed with "great reservation," *Ariz. Tax Rsch. Ass'n v. Dep't of Revenue*, 163 Ariz. 255, 258 (1989) (quoting *Molever v. Roush*, 152 Ariz. 367, 375 (App. 1986)). We do not find Doe's arguments in his appeal against the Salvatorians were frivolous, nor filed solely for the purpose of delay. *See* ARCAP 25; *see also Hoffman v. Greenberg*, 159 Ariz. 377, 380 (App. 1988) ("The line between an appeal which has no merit and one which is frivolous is very fine, and we exercise our power to punish sparingly."). We therefore decline to impose sanctions against Doe under ARCAP 25.

**¶45** The Diocese Defendants do not request an award of fees. As the prevailing parties, the Diocese Defendants are entitled to their costs upon compliance with ARCAP 21. *See* A.R.S. § 12-341.



AMY M. WOOD • Clerk of the Court
FILED:    AA